11-2003-cv
Shakhnes, et al v. Berlin, et al

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued: June 28, 2012      Decided: August 13, 2012)

Docket No. 11-2003-cv

_____

BORIS SHAKHNES, by his next friend Alla Shakhnes, individually and on behalf of
all others similarly situated, by his next friend Mikhail Feldman, individually and on
behalf of all others similarly situated, by his next friend Fei Mock, individually and on
behalf of all others similarly situated, by his next friend Sha-Sha Willis, individually and
on behalf of all others similarly situated, by his next friend Chaio Zhang, individually and
on behalf of all others similarly situated,

*Plaintiff-Appellee*,

—v.—

ELIZABETH R. BERLIN, Executive Deputy Commissioner of the New York State
Office of Temporary and Disability Assistance, NIRAV R. SHAH, as Commissioner of the
New York State Department of Health,

*Defendants-Appellants*,

VERNA EGGLESTON, Commissioner, New York City Human Resources
Administration,

*Defendant*.

_____

Before:
WINTER, STRAUB, and CHIN, *Circuit Judges*.

_____

Appeal from an Order of the United States District Court for the Southern District of
New York (Richard J. Holwell, *Judge*) granting declaratory and injunctive relief in favor of class
plaintiffs, who are applicants for, or recipients of, certain Medicaid services.  The District Court
permanently enjoined defendants to ensure that—in accordance with the Medicaid Act and an
applicable federal regulation—"final administrative action" is taken within 90 days of plaintiffs'

requests for Medicaid fair hearings. The District Court declared "final administrative action" to include the holding of fair hearings, the issuance of fair hearing decisions, and the implementation of relief ordered in such decisions. We hold that plaintiffs' statutory right to an opportunity for Medicaid fair hearings, as construed by the regulation, is enforceable through 42 U.S.C. § 1983. But we also hold that the District Court's injunctive order is overbroad because "final administrative action" does not include the implementation of relief ordered in fair hearing decisions. Accordingly, we **AFFIRM** in part and **VACATE** in part the Order of the District Court, and we **REMAND** for proceedings consistent with this opinion.

—————————————————

SANDRA D. HAUSER, SNR Denton LLP, New York, N.Y., *for Plaintiff-Appellee*.

YISROEL SCHULMAN, New York Legal Assistance Group, New York, N.Y., *for Plaintiff-Appellee*.

SIMON HELLER, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Richard Dearing, Deputy Solicitor General, *on the brief*), *for* Eric T. Schneiderman, Attorney General of the State of New York, New York, N.Y., *for Defendants-Appellants*.

—————————————————

STRAUB, *Circuit Judge*:

Defendants-Appellants, commissioners of the New York State Office of Temporary and Disability Assistance and of the New York State Department of Health, appeal from an Order entered in the United States District Court for the Southern District of New York (Richard J. Howell, *Judge*) granting declaratory and injunctive relief against them and in favor of Plaintiffs-Appellees, who are applicants for, or recipients of, Medicaid home health services who are not solely challenging any decision regarding Medicaid eligibility.

Plaintiffs allege that they have a statutory right, enforceable under 42 U.S.C. § 1983, to an opportunity for Medicaid fair hearings. Plaintiffs further allege that this right, as construed by an applicable federal regulation, entitles them to "final administrative action" within 90 days of their fair hearing requests, and that Defendants violated this right.

The District Court agreed. It declared that "final administrative action" includes the holding of Medicaid fair hearings, the issuance of fair hearing decisions, and the implementation of any relief ordered in those decisions. And it permanently enjoined Defendants to ensure that "final administrative action"—so defined—is implemented within 90 days of Plaintiffs' fair hearing requests.

We **AFFIRM** in part the Order of the District Court, because we conclude that Plaintiffs have a right to a Medicaid hearing and decision ordinarily within 90 days of their fair hearing requests, and that such right is enforceable under § 1983. But we also conclude that the District Court's permanent injunction is overbroad because "final administrative action" refers not to the implementation of relief ordered in fair hearing decisions, but to the holding of fair hearings and to the issuance of fair hearing decisions. Accordingly, we **VACATE** in part the Order of the District Court, and we **REMAND** the matter for further proceedings consistent with this opinion.

**BACKGROUND**

*I.* *Overview of Medicaid and the Fair Hearing System.*

*A.* *Medicaid.*

"Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990).[1] The federal and state governments share the cost of Medicaid, but each state government administers its own Medicaid plan. *See Conn. Dep't of Soc. Servs. v. Leavitt*, 428 F.3d 138, 141 (2d Cir. 2005). State Medicaid plans must, however, comply with applicable federal law and regulations. *See* 42 U.S.C. § 1396c; 42 C.F.R. § 430.0.

---

[1] Title XIX of the Social Security Act ("Medicaid Act") is codified at 42 U.S.C. § 1396 *et seq*.

Any state that participates in Medicaid must designate "a single State agency" ("State agency") to administer—or to supervise the administration of—the state's Medicaid plan. *See* 42 U.S.C. § 1396a(a)(5). Although the State agency may delegate to local entities the performance of certain responsibilities, *see* 42 C.F.R. § 431.10(e), the State agency must (1) "[h]ave methods to keep itself currently informed of the adherence of local [entities] to the State plan provisions and the agency's procedures for determining eligibility," and (2) "[t]ake corrective action to ensure their adherence," 42 C.F.R. § 435.903.

### B. The Fair Hearing System.

#### 1. Applicable Federal Law and Regulations.

States that participate in Medicaid must grant "an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3).

Section 431.244 of Title 42 of the Code of Federal Regulations—entitled "Hearing decisions"—provides that the State agency "must take final administrative action . . . [o]rdinarily, within 90 days" of the date a fair hearing is requested. *See* 42 C.F.R. § 431.244(f)(1)(ii) ("regulation"). The phrase "final administrative action" is not defined in the regulation or in the Medicaid Act.

#### 2. New York's Fair Hearing System.

In New York, the State agency responsible for administering Medicaid is the New York State Department of Health ("DOH"). *See* N.Y. Soc. Serv. Law § 363-a(1).

In accordance with federal law, the DOH has established a Medicaid fair hearing system, which purportedly allows individuals an opportunity to be heard with respect to claims for medical assistance that are "denied or [are] not acted upon with reasonable promptness." 42

-4-

U.S.C. § 1396a(a)(3); *see* N.Y. Soc. Serv. Law § 22. The DOH has elected to delegate to the New York State Office of Temporary and Disability Assistance ("OTDA") the duty to conduct Medicaid fair hearings. But the DOH itself remains responsible for "making final administrative determinations and issuing final decisions," *see* N.Y. Soc. Serv. Law § 364(2)(h), and for ensuring the fair hearing system's compliance with federal law and regulations, *see* 42 C.F.R. § 431.205.

## II. The Instant Matter.

### A. The Complaint.

Plaintiffs in this class action are residents of New York City who applied for or received Medicaid-funded home health services,[2] and who requested or will request fair hearings to challenge the denial, reduction, or termination of such services.

For purposes of this appeal, Plaintiffs allege that DOH and OTDA (collectively, "Defendants") failed "to take and/or ensure final administrative action within 90 days from the date [Plaintiffs] request fair hearings challenging the denial, discontinuance and/or reduction of Medicaid home health services" ("90-day claim"). Am. Compl. ¶ 131. According to Plaintiffs, this conduct violated their statutory right to an opportunity for Medicaid fair hearings, *see* 42 U.S.C. § 1396a(a)(3)—a right which, as construed by the regulation, allegedly entitles Plaintiffs to "final administrative action . . . [o]rdinarily, within 90 days" from the dates they requested fair hearings, *see* 42 C.F.R. § 431.244(f)(1)(ii). *See id.*

Plaintiffs claim they may enforce the foregoing statutory right—as construed by the regulation—through an action under 42 U.S.C. § 1983.

//

---

[2]    "Home health services" is a category of services provided to Medicaid recipients in the home, rather than in a hospital or other facility. *See* 42 C.F.R. § 440.70.

-5-

**B.      Proceedings in the District Court.**

Following discovery, Plaintiffs moved for class certification and for partial summary judgment on the 90-day claim. Defendants cross-moved for summary judgment, arguing "primarily . . . that there is no cause of action for the alleged deficiencies in Medicaid Fair Hearing procedures." *Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp. 2d 602, 609 (S.D.N.Y. 2010).

*                *                *

By Memorandum Opinion & Order filed September 30, 2010 ("2010 Order"), the District Court certified Plaintiffs' proposed class, granted partial summary judgment in favor of Plaintiffs on the 90-day claim, and denied Defendants' cross-motion for summary judgment. *See Shakhnes*, 740 F. Supp. 2d at 637.

First, the District Court held that the fair hearing requirement in 42 U.S.C. § 1396a(a)(3) is enforceable through a cause of action under § 1983. *See id.* at 615-16.

Second, the District Court concluded that the regulation's 90-day requirement defines the content of the statutory right to a fair hearing. That is, the District Court held that the "'ordinarily, within 90 days' requirement defines the temporal element of a § 1983 cause of action for enforcement of 42 U.S.C. § 1396a(a)(3)." *Id.* at 618 (quoting 42 C.F.R. § 431.244(f)(1)).

In short, the District Court concluded that Plaintiffs have a cause of action to enforce their statutory right to an opportunity for a fair hearing, as defined by the regulation's requirement that "final administrative action" be taken within the specified time frame. Based on the record evidence, the District Court concluded that Defendants violated that right.

*                *                *

-6-

The District Court subsequently issued an Order granting declaratory and injunctive relief in favor of Plaintiffs.  *See* Order, *Shakhnes ex rel. Shakhnes v. Eggleston*, No. 06 Civ. 4778, (S.D.N.Y. Apr. 15, 2011), ECF No. 146 ("2011 Order").

In pertinent part, the District Court declared that

> Final Administrative Action occurs when defendants, separately or collectively, have scheduled a Fair Hearing, held the Fair Hearing, issued a Decision After Fair Hearing ("DAFH"), and taken all actions necessary to implement the relief ordered in the DAFH.  For cases in which care is ordered by the DAFH, Final Administrative Action occurs on the date on which an aide goes to the Appellant's home to provide the ordered home health care services.

*Id.* at 2 ¶ 4.

The District Court also directed Defendants to ensure that "Final Administrative Action"—as defined above—is provided "within 90 days of . . . [a] request for a Fair Hearing."  *Id.* at 3 ¶ 7.

### C.     Subsequent Proceedings.

Defendants now appeal.

First, they argue that the District Court erred by concluding that the regulation "merely flesh[es] out the meaning of" the statutory right to an opportunity for a fair hearing.  Def. Mem. at 22.  Defendants contend that because the regulation's 90-day requirement is an "additional" obligation "not contained or reasonably implicit in [the Medicaid Act], the regulation cannot be enforced through § 1983."  *Id.*

Second, Defendants argue that the District Court's injunction is overbroad.  Specifically, they argue (1) that "the district court's construction of the phrase 'final administrative action' to include the actual provision of services is wrong as a matter of law," *id.* at 21; and (2) that the injunction applies the 90-day requirement to certain hearings "that are outside the express terms of the regulation," *id.* at 43.

**DISCUSSION**

*I.      Standards of Review.*

We review de novo a district court's legal conclusions made in the context of an order granting summary judgment. *See Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (per curiam).

"We review the scope of a district court's injunction for abuse of discretion, which can be found if the district court . . . incorrectly applied the law." *Catanzano v. Wing*, 103 F.3d 223, 228 (2d Cir. 1996) (citation and quotations omitted).

*II.      The Right to an Opportunity for a Fair Hearing.*

The District Court correctly concluded in its 2010 Order that Plaintiffs' statutory right to an opportunity for Medicaid fair hearings—as construed by the regulation—is enforceable through § 1983.[3]

//

---

[3]      Plaintiffs argue that we lack jurisdiction to consider any aspect of the District Court's 2010 Order granting partial summary judgment, because Defendants appealed only from the District Court's 2011 Order granting declaratory and injunctive relief.

Plaintiffs are wrong. In reviewing an order granting a permanent injunction, we "may also address the summary judgment order that served as the district court's principal legal basis for granting the injunction," at least where "the district court's ruling on summary judgment was inextricably intertwined with its ruling granting a permanent injunction." *Law v. NCAA*, 134 F.3d 1010, 1015 (10th Cir. 1998); *see also SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 178 (2d Cir. 2000) (an "appeal from a final judgment brings up for review all reviewable rulings which produced the judgment" (quotations omitted)).

The 2010 Order served as the District Court's "principal legal basis for granting" declaratory and injunctive relief in the 2011 Order. *See Law*, 134 F.3d at 1015. Any doubt as to whether the two Orders are "inextricably intertwined" should have been dispelled by the first sentence of the 2011 Order, which states that the District Court granted certain relief "[f]or the reasons set forth in [the 2010 Order]." *See* 2011 Order at 1.

In short, Defendants' failure to explicitly state in their Notice of Appeal that they sought to appeal from the 2010 Order does not preclude our review of that Order.

### A. Applicable Framework.

Section 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Violations of *rights* thus give rise to § 1983 actions; mere violations of *laws* do not. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). The question, then, is whether an alleged *right* is enforceable under § 1983.

#### 1. Source of the Alleged Right.

We think it important to underscore the source of the alleged right here at issue.

Defendants correctly observe that many of our Sister Courts have held that regulations may not independently create individual rights enforceable under § 1983.[4] But this observation is beside the point, because the District Court did not hold that *the regulation* here at issue independently creates a right enforceable under § 1983.

Instead, the District Court held that Plaintiffs have a *statutory* right under 42 U.S.C. § 1396a(a)(3) to an opportunity for Medicaid fair hearings that is enforceable through a cause of action under § 1983. Defendants do not argue that this particular holding was in error.

#### 2. Determining the Scope of the Alleged Right.

Defendants do, however, argue that the District Court misconstrued the scope of Plaintiffs' statutory right to an opportunity for Medicaid fair hearings. That is, Defendants argue that the regulation requiring "final administrative action" ordinarily within 90 days of a fair hearing request cannot properly be deemed to "merely flesh out the meaning of" the statutory

---

[4] *See, e.g.*, *Johnson v. City of Detroit*, 446 F.3d 614, 629 (6th Cir. 2006); *Save Our Valley v. Sound Transit*, 335 F.3d 932, 939 (9th Cir. 2003); *S. Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 274 F.3d 771, 790 (3d Cir. 2001); *Harris v. James*, 127 F.3d 993, 1009 (11th Cir. 1997); *Smith v. Kirk*, 821 F.2d 980, 984 (4th Cir. 1987); *see also D.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 513 (2d Cir. 2006) (declining to address the issue).

right to an opportunity for Medicaid fair hearings. Def. Mem. at 22 (quotations omitted). As a result—say Defendants—Plaintiffs cannot enforce the statute in conjunction with the regulation.

### a.     Applicable Standard.

It is well-settled that, "[a]s an agency interpretation of a statute, a regulation may be relevant in determining the scope of the right conferred by Congress." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 943 (9th Cir. 2003). The following rubric guides our inquiry in that regard:

> [S]o long as the *statute itself* confers a specific right upon the plaintiff, and a *valid regulation merely further defines or fleshes out the content of that right*, then the statute—in conjunction with the regulation—may create a federal right as further defined by the regulation. . . .
>
> On the other hand, if the regulation defines the content of a statutory provision that creates no federal right . . . , or if the regulation goes beyond explicating the specific content of the statutory provision and imposes distinct obligations in order to further the broad objectives underlying the statutory provision, . . . the regulation is too far removed from Congressional intent to constitute a "federal right" enforceable under § 1983.

*Harris v. James*, 127 F.3d 993, 1009 (11th Cir. 1997) (quotations omitted) (emphasis and formatting added); *see also D.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 513 (2d Cir. 2006) (parenthetically quoting *Harris*).

### b.     Applications of the Standard.

A review of the case law in this area proves instructive.

*        *        *

We begin with *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418 (1987), a decision on which the Eleventh Circuit relied in formulating the rubric we apply here, *see Harris*, 127 F.3d at 1008-09.

The plaintiffs in *Wright* brought a § 1983 claim alleging that a public housing authority overbilled them for utilities. According to the plaintiffs, the housing authority's conduct violated (i) a federal statute, which imposed a rent ceiling based on plaintiffs' incomes, and (ii) the statute's implementing regulations, which required the housing authority to include a reasonable utility allowance in plaintiffs' rents. *See Wright*, 479 U.S. at 419-20. In response, the housing authority argued that neither the statute nor the regulations gave the plaintiffs a right enforceable through § 1983. *See id.* at 429-430.

The Court rejected this argument. According to the Court, the applicable statute "could not be clearer: . . . tenants could be charged as rent no more and no less than 30 percent of their income." *Id.* at 430. In addition, the applicable regulations "expressly required that a 'reasonable' amount for utilities be included in rent that [the housing authority] was allowed to charge." *Id.* The Court then observed that the relevant federal agency had "adhered" to the regulations' "interpretation" of the statute, and noted that the agency's "view is entitled to deference." *See id.* The Court rejected the argument that the regulations' "definition of rent as including a reasonable charge for utilities is not authorized by the statute." *Id.* at 431 n.11.

The Court subsequently described its holding in *Wright* as follows:

> [A] statute providing that tenants in low-income housing could only be charged 30% of their income in rent, in conjunction with regulations providing that "reasonable utilities" costs were included in the rental figure, created [a] right under § 1983 to not be charged more than a "reasonable" amount for utilities.

*Suter v. Artist M.*, 503 U.S. 347, 361 n.13 (1992).

We emphasize that "the regulation at issue in *Wright* merely defined the specific right that Congress already had conferred through the statute." *See S. Camden Citizens in Action v N.J. Dep't of Envtl. Prot.*, 274 F.3d 771, 783 (3d Cir. 2001). In other words, "the *Wright* Court

-11-

located the alleged right in the statutory provision and then relied upon the implementing regulations to define and interpret that right." *Id.*; *see also Harris*, 127 F.3d at 1007-08 (same).

\* \* \*

Our decision in *D.D. v. New York City Board of Education*, 465 F.3d 503 (2d Cir. 2006) provides another example of a regulation deemed to "define" the scope of an extant, statutory right, such that the right—so defined—is enforceable under § 1983.

The plaintiffs in *D.D.* alleged that the New York City Department of Education ("DOE") violated their rights under the Individuals with Disabilities Education Act ("IDEA"). *Id.* at 506.

Pursuant to the IDEA, states must provide disabled students with "free appropriate public education" designed to serve the students' needs. *Id.* "Free appropriate public education" is defined in part as "special education and related services that . . . are provided in conformity with the individualized education program ["IEP"] required under [the IDEA]."[5] *Id.* at 512 (quotations omitted). The IDEA does not specify a time frame for implementing an IEP after it has been developed. *Id.* But the applicable federal regulation requires that the IEP be "implemented *as soon as possible*" following its development. *Id.* at 512-13 (quotations omitted) (emphasis added). The plaintiffs in *D.D.* alleged that the DOE violated the IDEA by failing to implement their IEPs "immediately, or at least within 30 days, after their IEPs [were] developed." *Id.* at 512 & n.11.

Citing to *Wright*, we concluded (i) that the IDEA "creates the right to a free appropriate public education enforceable through § 1983," and (ii) that the federal regulation "merely defines the scope of that right with respect to the requisite time frame for implementing an IEP." *Id.* at 513. We emphasized, however, that the federal regulation "requires only that IEPs be

---

[5] The IEP "is a written statement that . . . describes the specially designed instruction and services that will enable the child to meet [certain] objectives." *D.D.*, 465 F.3d at 507-08 (quotations omitted).

implemented 'as soon as possible,'" and not "immediately" or within 30 days, as the plaintiffs had asserted. *See id.*

*       *       *

The Eleventh Circuit's decision in *Harris* provides an example of a regulation that "goes beyond explicating the specific content of [a] statutory provision," such that the underlying statutory right—at least as "defined" by the regulation—could not be enforced under § 1983. *See Harris*, 127 F.3d at 1009.

In *Harris*, the court considered whether Medicaid recipients have a federal right to transportation to and from Medicaid providers, which right may be enforced in an action under § 1983. *Id.* at 996. The court answered that question in the negative.

As a preliminary matter, the *Harris* court noted that "the plaintiffs seek to enforce a transportation requirement that appears explicitly not in the Medicaid Act, but in a federal regulation." *Id.* at 1005. But the court rejected any suggestion that an enforceable right could be created (i) by a regulation alone, or (ii) by a regulation's "valid . . . interpretation of a statute that creates some enforceable right." *Id.* at 1008. Instead, the court held that the plaintiffs' purported right would be enforceable under § 1983 only if "the statute itself confers a specific right upon [them], and [the] valid regulation merely further defines or fleshes out the content of that right." *Id.* at 1009. Under such circumstances, "the statute—in conjunction with the regulation— [would] create a federal right as further defined by the regulation." *Id.* (quotations omitted).

The court then examined certain of the statutory provisions which allegedly conferred specific rights on the plaintiffs. *See id.* at 1010-12. One required state Medicaid plans to provide medical assistance "with reasonable promptness." *Id.* at 1005. Another required the plans to provide comparable assistance to different categories of needy individuals. *See id.* The court

-13-

assumed that these provisions "create[ ] some federal right." *See id.* at 1011 & n.27. And the court further assumed that "the transportation regulation is a valid interpretation of each of these provisions." *See id.* at 1011. But the court nevertheless concluded that the plaintiffs enjoyed no "federal right to transportation." *Id.* The court reasoned as follows:

> [T]he transportation regulation would be valid not because it *reasonably defines the content of rights created by the statutory provisions*, as did the regulation in *Wright*, but only because the regulation furthers the broad objectives underlying each statutory provision.
>
> In other words, we do not think that transportation to and from providers is reasonably understood to be part of the *content* of a [statutory] right to prompt provision of assistance [or] comparable assistance . . . . Instead, if the regulation is a valid interpretation of these [statutory] provisions, it would be because transportation may be a reasonable means of *ensuring* the prompt provision of assistance [or] comparable assistance . . . . Such links to Congressional intent may be sufficient to support the validity of a regulation; however, we think they are too tenuous to support a conclusion that Congress has unambiguously conferred upon Medicaid recipients a federal right to transportation enforceable under § 1983.

*Id.* at 1011-12 (first emphasis and formatting added).

**B.     Analysis.**

The District Court correctly held that 42 U.S.C. § 1396a(a)(3)—as construed by the regulation—creates a right, enforceable under § 1983, to receive a fair hearing and a fair hearing decision "[o]rdinarily, within 90 days" of a fair hearing request.

**1.     Fair Hearings.**

We conclude that the regulation's 90-day requirement "merely further defines or fleshes out the content" of the right to "an opportunity" for Medicaid fair hearings, such that Plaintiffs have a right—enforceable under § 1983—to final administrative action "[o]rdinarily, within 90 days" of their request, *see* 42 C.F.R. § 431.244(f).

*     *     *

As discussed, the regulation here at issue says Defendants must take "final administrative action . . . [o]rdinarily, within 90 days" of the date a fair hearing is requested. *See id.* § 431.244(f)(1)(ii). Defendants strenuously argue that "final administrative action" refers to the issuance of decisions after fair hearings.[6] Defendants' argument makes sense; the regulation is, after all, entitled "Hearing decisions." *See id.* § 431.244. If the regulation calls for the issuance of a decision after a fair hearing "[o]rdinarily, within 90 days" of the date the fair hearing was requested, the regulation necessarily also calls for the hearing itself to be held within that time frame.

But does this aspect of the regulation merely further define or flesh out the content of the statutory right to an opportunity for Medicaid fair hearings? We conclude it does. And we think our decision in *D.D.* leaves no room to conclude otherwise.

The statute at issue in *D.D.*—the IDEA—did not specify a time frame for implementing the statutory right to a free appropriate public education. The regulation at issue in *D.D.*, however, required that IEPs be implemented "as soon as possible" following their development. We concluded that this regulation "merely defines the scope" of the statutory right to a free appropriate public education "with respect to the requisite time frame for implementing" that right. *See D.D.*, 465 F.3d at 513.

Similarly, the Medicaid Act does not specify a time frame within which Defendants must provide Plaintiffs with Medicaid fair hearings; the relevant statutory provision says only that

---

[6] *See* Def. Mem. at 30 ("[T]he ninety-day time frame of 42 C.F.R. § 431.244(f) applies to the *adjudication* of fair hearings."); *id.* at 35 ("[T]he term 'final administrative action' refers . . . to the issuance of a final administrative decision by the state agency that is subject to judicial review."); *id.* at 37 ("[T]he plain text of the regulation governs hearing decisions."); *id.* ("[T]he term 'final administrative action' is most reasonably read to mean a final and definitive decision after fair hearing by the state agency."); *id.* at 41 (noting that the relevant federal agency has "repeatedly described the ninety-day time limit in § 431.244(f) as a deadline for issuance of a final hearing decision").

-15-

Defendants must grant "an opportunity" for such hearings to individuals whose claims for medical assistance have not been decided with reasonable promptness. *See* 42 U.S.C. § 1396a(a)(3). Just as the regulation in *D.D.* "merely define[d]" the time frame for implementing the right to a free appropriate public education, the 90-day requirement in the regulation here at issue "merely defines" the time frame with respect to Plaintiffs' right to an "opportunity" for Medicaid fair hearings.[7] Or, as the District Court reasoned, the right to an opportunity for a fair hearing includes the right to a fair hearing within some period of time, and the regulation's 90-day requirement simply defines what that period of time is.

* * *

We find no merit in Defendants' contention that *D.D.* is inapposite to the instant matter.

Defendants argue that, unlike the regulation at issue in *D.D.*, the regulation at issue here imposes specific temporal guidelines and thus affords Plaintiffs greater relief than they could obtain under the Medicaid Act itself. Specifically, Defendants contend that, in *D.D.*, we "construed the regulation's 'as soon as possible' language as by design, a flexible requirement, and stressed that the regulation did not impose a rigid, outside time frame for implementation, but rather permitted specific inquiry into the causes of the delay in the particular case." Def. Mem. at 29 (quotations omitted). By contrast—Defendants argue—the regulation at issue in the instant matter "imposes a rigid, outside time frame for final administrative action . . ., and does not permit specific inquiry into the causes of the delay on a case-by-case basis." *Id.* at 30 (quotations omitted).

---

[7]    *Cf. Doe v. Chiles*, 136 F.3d 709, 717 (11th Cir. 1998) (statutory right to medical assistance "with reasonable promptness" was deemed to be "fleshed out" by corresponding regulations, which required (a) that medical aid be furnished "without any delay caused by the agency's administrative procedures," and (b) that eligibility determinations be made within 90 days for disability-based applications and within 45 days for all others).

Contrary to Defendants' reading of *D.D.*, we did not hold in that case that a regulation may be deemed to "further define[ ]" or "flesh[ ] out the content" of a statutory right *only* if the regulation imposes "flexible" requirements. Rather, our discussion in *D.D.* of the "flexible" nature of the language in the regulation there at issue came in response to an argument made by the plaintiffs: According to the plaintiffs, the regulation in *D.D.* required that their statutory right to a free appropriate public education be implemented either "immediately," or "within 30 days." *See D.D.*, 465 F.3d at 513. We rejected that argument based on our review of certain rulemaking "commentary." We observed that the Secretary of Education had explicitly declined to adopt "a rigid, outside time frame for implementation." *See id.* at 514. This observation does not, however, signify that a regulation's "rigid" temporal guideline may never "further define[ ]" or "flesh[ ] out the content" of an underlying statutory right.

\*     \*     \*

Finally, we note that the statute and regulation at issue here stand in contrast to those that were at issue in *Harris*. The regulation in *Harris* required that the plaintiffs be given transportation to and from Medicaid providers. *Harris*, 127 F.3d at 996. Such a requirement could not "reasonably [be] understood to be part of the *content* of," for example, a statutory right to receive medical assistance with reasonable promptness; the regulation thus did not merely define the content of that underlying right. *See id.* at 1012. By contrast, the 90-day requirement in the regulation at issue here may reasonably be understood to be part of the content of the right to an opportunity for Medicaid fair hearings; the regulation merely defines the scope of that right with respect to the time frame in which the right must be provided. *See D.D.*, 465 F.3d at 513.

//

//

### *2.      Fair Hearing Decisions.*

We further conclude that the right to an opportunity for Medicaid "fair hearings" includes a right to a decision following such hearings. That being so, we have little difficulty concluding that the regulation's 90-day requirement "merely further defines or fleshes out the content of that right." *See Harris*, 127 F.3d at 1009.

*      *      *

The Medicaid Act does not define the contours of "a fair hearing" for purposes of 42 U.S.C. § 1396a(a)(3). But the applicable federal regulation says that the Medicaid "hearing system must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970)." *See* 42 C.F.R. § 431.205(d).

The due process standards set forth in *Goldberg* entitle Plaintiffs to decisions following their Medicaid fair hearings. For one, *Goldberg* says that "*the decisionmaker's conclusion . . . must rest solely on the legal rules and evidence adduced at the hearing*," and that "*the decision maker should state the reasons for his determination and indicate the evidence he relied on*." *Goldberg*, 397 U.S. at 271 (emphasis added). In addition, the *Goldberg* Court emphasized that "an impartial decision maker is essential." *Id.* We see little reason why this would be so unless the right to a fair hearing includes the right to a decision.[8]

---

[8]      *See, e.g.*, *Morgan v. United States*, 304 U.S. 1, 18-19 (1938) ("Those who are brought into contest with the Government in a quasijudicial proceeding . . . are entitled . . . to be heard upon its proposals *before it issues its final command*." (emphasis added)); *Grossmuller v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 715 F.2d 853, 858 n.5 (3d Cir. 1983) ("[T]he persistent core requirements of review intended to be full and fair include . . . having the decision-maker consider the evidence presented by both parties *prior to reaching and rendering his decision*." (emphasis added) (citing *Morgan*)); *Billington v. Underwood*, 613 F.2d 91, 95 (5th Cir. 1980) (per curiam) ("The very notion of a hearing, however informal, connotes that the decision maker will listen to the arguments of both sides *before basing a decision* on the evidence and legal rules adduced at the hearing." (emphasis added)); *Whitfield v. Hanges*, 222 F. 745, 749 (8th Cir. 1915) ("Indispensable requisites of a fair hearing . . . are that . . . the decision shall be governed by and based upon the evidence at the hearing, and that only; and that the

-18-

In light of the foregoing, we conclude that the statutory right to an opportunity for a "fair hearing" includes the right to a decision. Implicit in the right to a decision is that the decision must be issued within some period of time. The regulation—which, Defendants concede, encompasses the issuance of fair hearing decisions—says what that period of time is. Accordingly, we hold that the regulation merely defines or fleshes out Plaintiffs' fair hearing right, which is enforceable under § 1983. *See D.D.*, 465 F.3d at 513.

### III. *Scope of the Injunction.*

Although the District Court correctly held that the statutory right to an opportunity for Medicaid fair hearings—as construed by the regulation—is enforceable under § 1983, the District Court exceeded the bounds of its allowable discretion by granting an impermissibly broad injunction.[9]

An injunction is overbroad when it restrains defendants from engaging in legal conduct. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011).

The injunction here at issue is thus overbroad because it compels Defendants to *implement the relief* ordered in a fair hearing decision within the regulation's 90-day time frame, despite the fact that the regulation imposes on Defendants no such obligation.

---

decision shall not be without substantial evidence taken at the hearing to support it."); *see also Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001) ("A fundamentally fair hearing is one that meets the minimal requirements of fairness—adequate notice, a hearing on the evidence, *and an impartial decision* by the arbitrator." (quotations omitted) (emphasis added)).

[9] Defendants' arguments as to the scope of the injunction are advanced for the first time on appeal. We nevertheless exercise our discretion to consider these arguments, because (a) they raise pure issues of law, *see, e.g.*, *Dean v. Blumenthal*, 577 F.3d 60, 67 n.6 (2d Cir. 2009); *Vintero Corp. v. Corporacion Venezolana de Fomento*, 675 F.2d 513, 515 (2d Cir. 1982) (per curiam); and (b) doing so is "necessary to remedy [the] obvious injustice," *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994), that would result if Defendants were forced to comply with an impermissible injunction.

Defendants also contend that the injunction is overbroad because it applies the regulation's 90-day requirement to persons who are not enrollees in Medicaid managed care organizations. We disagree.

### A.     *"Final Administrative Action" Does Not Include the Implementation of Relief.*

In its 2011 Order, the District Court enjoined Defendants to provide "final administrative action" within 90 days of a request for a Medicaid fair hearing. According to the District Court, "[f]inal [a]dministrative [a]ction occurs when [D]efendants . . . have . . . *taken all actions necessary to implement the relief ordered*" in decisions after fair hearings. 2011 Order at 2 ¶ 4 (emphasis added).

We do not agree with the District Court's construction of "final administrative action." That phrase is not defined in the Medicaid Act or in the applicable regulations. But the structure, text, and drafting history of the applicable regulations, together with a review of administrative law principles and other statutory and regulatory provisions, convince us that "final administrative action" does not include the implementation of relief ordered in fair hearing decisions. Accordingly, although we have previously acknowledged that the statutory right to Medicaid fair hearings under 42 U.S.C. § 1396a(a)(3) "must include within it the right to effective redress," *Catanzano*, 103 F.3d at 229, that right—at least in conjunction with the regulation here at issue—does not require Defendants to implement the relief ordered in fair hearing decisions within the regulation's 90-day time frame. The District Court's injunction is thus overbroad. *Cf. Mickalis Pawn Shop*, 645 F.3d at 145.

//

//

//

### *1.*     *Structure, Text, and Drafting History.*

The structure and text of the applicable regulations lead us to conclude that "final administrative action" refers to the holding of fair hearings and to the issuance of fair hearing decisions, rather than to the implementation of relief ordered in those decisions.

As a preliminary matter, the regulation appears under a subpart entitled "Fair Hearings For Applicants and Recipients." The regulation itself is entitled "*Hearing decisions*." *See* 42 C.F.R. § 431.244 (emphasis added). It sets forth the required elements of fair hearing decisions,[10] and it states that such decisions "must be based exclusively on evidence introduced at the hearing," *id.* § 431.244(a). Subsection (f) of § 431.244—the subsection at issue here— appears between two subsections which relate exclusively to the issuance of decisions after fair hearings: Section 431.244(e) details the requisite elements of a decision following a de novo hearing; Section 431.244(g) states that the public must have access to all hearing decisions.

The subject matter of § 431.244 is thus generally confined to the composition and issuance of decisions after fair hearings. And nothing in the regulation's text suggests that "final administrative action" encompasses the implementation of relief authorized in such decisions. This makes sense, because a separate regulation, entitled "Corrective action," covers the implementation of certain types of relief. *See* 42 C.F.R. § 431.246 (stating that Defendants must provide retroactive benefits and provide for the admission to medical facilities if hearing decisions so require). Indeed, we have observed that "the results of [fair] hearings will be binding on the state" based on the "Corrective action" regulation, rather than on the "Hearing decision" regulation that is at issue here. *See Catanzano*, 103 F.3d at 228.

---

[10]     *See*, *e.g.*, 42 C.F.R. § 431.244(d) (stating that, in an evidentiary hearing, the decision must be in writing, and must summarize the facts and identify the regulations supporting the decision); *id.* § 431.244(e) (stating that, in a de novo hearing, the decision must specify the reasons for the decision, and must identify the supporting evidence and regulations).

* * *

The drafting history of the regulation further demonstrates that the 90-day time frame applies to the issuance of decisions rather than to the implementation of relief.

We begin with 45 C.F.R. § 205.10, the predecessor to 42 C.F.R. § 431.244. Section 205.10 was entitled "Fair hearings." *See* Fair Hearings, 35 Fed. Reg. 8448 (May 29, 1970). Subsection (11) of § 205.10 provided that "[p]rompt, definitive and final administrative action will be taken within 60 days from the date of the request for a fair hearing, except where the claimant requests a delay in the hearing." *Id.* at 8449. The time frame for "[p]rompt, definitive, and final administrative action" was later extended to 90 days. *See* Methods for Determination of Eligibility, 38 Fed. Reg. 22,005, 22,008 (Aug. 15, 1973). The relevant agency explained the need for the change as follows: "In view of the difficult position facing States with *substantially increased hearing caseloads*, the 60-day period is considered insufficient *for the orderly processing of cases*." *Id.* at 22,006 (emphasis added). The agency concluded that "[n]inety days for *processing hearings*" was "a more realistic time frame." *Id.* (emphasis added). And the agency described the change as an "[e]xtension from 60 to 90 days *for hearing decisions*." *Id.* (emphasis omitted).

Later agency commentary similarly referred to the 90-day requirement in § 431.244 as a deadline for the issuance of hearing decisions. *See, e.g.*, Medicaid Program; Medicaid Managed Care: New Provisions, 67 Fed. Reg. 41,989, 41,060 (June 14, 2002) (referencing "the 90-day clock for a fair hearing *decision*" (emphasis added)); *id.* ("[T]he State is required to *resolve the State fair hearing* within 90 days." (emphasis added)); *id.* at 41,064 (referencing "the overall 90-day timeframe for a final fair hearing *decision*" (emphasis added)); *id.* at 41,076 (referencing "the 90-day timeframe *for resolution of the State fair hearing*" (emphasis added)).

The agency's commentary with respect to § 431.244(f)(2) and (3) is particularly revealing. These provisions once required that "final administrative action" be taken within "72 hours" for certain cases necessitating expedited review. *See* 42 C.F.R. § 431.244(f)(2), (3) (2001). The agency described this requirement as follows: "States must *conduct a State fair hearing and issue a final decision on these cases* . . . no later than 72 hours from receipt of the appeal." Medicaid Program; Medicaid Managed Care, 66 Fed. Reg. 6228, 6338 (Jan. 19, 2001) (emphasis added).

The provisions were later amended, such that "final administrative action" for expedited cases was required "within 3 working days" of certain triggering events. *See* 42 C.F.R. § 431.244(f)(2), (3) (2002). In explaining this amendment, the agency noted that "commenters recommended that the State Medicaid agency be permitted 3 working days *to hear expedited appeals* that they receive, rather than 72 hours." 67 Fed. Reg. at 41,062 (emphasis added). The agency "agree[d]," and noted that the amended regulation "now requires the State *to conduct a fair hearing and make its decision* within 3 working days." *Id.* (emphasis added).

If taking "final administrative action" "within 3 working days" means that the State is required to implement relief in that time frame, the agency made no mention of it.

### 2. *The* State Medicaid Manual.

The *State Medicaid Manual* ("*Manual*"), to which we owe deference,[11] further indicates that "final administrative action" refers not to the implementation of relief, but to the issuance of fair hearing decisions.

---

[11] *See*, *e.g.*, *Sai Kwan Wong v. Doar*, 571 F.3d 247, 258-60 (2d Cir. 2009); *see also id.* at 253 n.6 (noting that the *Manual* "makes available to all State Medicaid agencies . . . informational and procedural material needed by the States to administer the Medicaid program. . . . The manual provides instructions, regulatory citations, and information for implementing provisions of Title XIX of the Social Security Act (the Act). Instructions are official

For one, the *Manual* says that "[a] *conclusive decision* in the name of the State agency shall be made by the hearing authority." *Manual* § 2903.2(A) (emphasis added). Although the hearing authority may remand the matter to a local hearing officer where "the materials submitted are insufficient to serve as [a] basis for a decision," the *Manual* clarifies that such a remand "*is not a substitute for definitive and final administrative action*." *Id.* (emphasis added) (quotations omitted). If "final administrative action" refers to the issuance of a final agency decision, the foregoing clarification is justifiable: It could make sense to clarify that a decision to remand a matter for further consideration does not discharge the obligation to issue a *final decision*. But if, as Plaintiffs contend, "final administrative action" refers to the implementation of relief, the foregoing clarification would be unnecessary: The decision to remand a matter for further consideration could never constitute the implementation of relief.

In addition, § 2903.3 of the *Manual*—entitled "State Agency Responsibility In Carrying Out The Hearing Decision"—states that Defendants "are responsible for assuring that the [hearing authority]'s decision *is carried out promptly*." *Id.* § 2903.3(A) (emphasis added). "Promptly" does not, however, necessarily mean "within 90 days" of a request for a hearing. Had the drafters of the *Manual* wished to use the latter standard in § 2903.3(A), they certainly could have done so; indeed, the *Manual* recites that standard in the very next subsection, *see id.* § 2903.3(B).

### 3.     *Administrative Law Principles.*

Well-settled principles of administrative law further indicate that the phrase "final administrative action" in the regulation here at issue refers to a final determination after a Medicaid fair hearing, rather than to the implementation of relief.

---

interpretations of the law and regulations, and, as such, are binding on Medicaid State agencies") (quotations omitted).

Under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, courts may not review agency actions unless such actions are "final." *See*, *e.g.*, *Bennett v. Spear*, 520 U.S. 154, 177 (1997); *Fund for Animals, Inc. v. United States BLM*, 460 F.3d 13, 18 (D.C. Cir. 2006). An agency action is final if two conditions are met: (1) "the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177-78 (citation omitted).

Defining "final administrative action" in accordance with the background principles of administrative law makes good sense. Plaintiffs may not obtain judicial review of Medicaid fair hearing decisions until such decisions are "final." *See* N.Y. Soc. Serv. L. § 22(9)(b) ("Any aggrieved party . . . may apply for review as provided in [N.Y. C.P.L.R. § 7801]."); N.Y. C.P.L.R. § 7801 ("[A] proceeding under this article shall not be used to challenge a determination . . . which is not final."). The drafters of 42 C.F.R. § 431.244(f) were no doubt aware of the administrative law scheme to which they contributed. We thus cannot discount the possibility that they used the phrase "final administrative action" to signify the final determination of rights or obligations which sets the stage for judicial review in state court.

### 4. Other Statutory and Regulatory Provisions.

Finally, we note that other statutory and regulatory provisions not at issue in this case explicitly cover the furnishing of Medicaid. Section 1902(a)(8) of the Medicaid Act requires state plans for medical assistance to provide that "medical assistance . . . shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). A regulation that implements § 1902(a)(8) directs state agencies to "[f]urnish Medicaid promptly to beneficiaries without any delay caused by the agency's administrative procedures." 42 C.F.R. § 435.930(a).

-25-

Had the drafters of 42 C.F.R. § 431.244(f) wished to require the "furnish[ing]" of Medicaid within the regulation's 90-day time frame, they clearly knew how to do so.

### 5. Summary.

In light of the foregoing, we conclude that "final administrative action" in 42 C.F.R. § 431.244(f) does not include the implementation of relief ordered in decisions after Medicaid fair hearings. The District Court thus exceeded the bounds of its allowable discretion by enjoining Defendants to "take[ ] all actions necessary to implement the relief ordered" in such decisions within 90 days of Plaintiffs' fair hearing requests. *See* 2011 Order at 2 ¶ 4.

### B. "Enrollees."

As discussed, the injunction requires Defendants to ensure that "every New York City applicant for, and recipient of," Medicaid-funded home health services receive final administrative action within the time frame specified in 42 C.F.R. § 431.244(f). *See* 2011 Order at 3 ¶ 7.

Defendants argue that the injunction is overbroad because it applies the 90-day requirement "to fair hearings that are outside the express terms of the regulation." Def. Mem. at 43. In particular, Defendants argue that

> [T]he regulation's ninety-day time frame, on its face, applies only to fair hearings requested by enrollees in Medicaid [managed care organizations and prepaid inpatient health plans]. Yet the [D]istrict [C]ourt's injunction applies the ninety-day deadline to all Medicaid applicants' and recipients' requests for fair hearing[s] . . ., even if those individuals are not enrollees in Medicaid managed care.

*Id.*

We reject Defendants' construction of the regulation. In our view, the regulation applies to all Medicaid "enrollees," and not just to enrollees in managed care organizations ("MCOs").

\* \* \*

-26-

Section 431.244(f), by its terms, applies to "enrollees." Specifically, the regulation provides that "final administrative action" must be taken

[o]rdinarily, within 90 days from the earlier of the following:

> (i) The date the *enrollee* filed [a managed care organization or prepaid inpatient health plan appeal], not including the number of days the *enrollee* took to subsequently file for a State fair hearing; or
>
> (ii) If permitted by the State, the date the *enrollee* filed for direct access to a State fair hearing.

42 C.F.R. § 431.244(f) (emphasis added).

What, then, is the intended scope of "enrollees"? The term is not defined in 42 C.F.R. § 431.244. But the regulation's drafting history, together with a definition provided in a related regulation, convince us that the term must simply refer to persons who are enrolled in the Medicaid program.

As originally implemented, the regulation provided that "[t]he agency must take final administrative action within 90 days from the date of the request for a hearing." *See* 42 C.F.R. § 431.244(f) (1979); *see also* Medicaid Program: Redesignation and Rewrite, 44 Fed. Reg. 17,926, 17,933 (Mar. 23, 1979). In 2001, the regulation was amended to its current form. *See* 42 C.F.R. § 431.244(f) (2001).

The enactment of the Balanced Budget Act of 1997 ("BBA"), Pub. L. No. 105-33, 111 Stat. 251 (1997), led to the 2001 amendment. In brief, when the Medicaid program was originally created, "coverage typically was provided through reimbursements by the State agency to health care providers who submitted claims for payment after they provided health care services to Medicaid beneficiaries." 67 Fed. Reg. at 40,989. This "fee-for-service" arrangement

gradually faded from prominence as State agencies began to provide Medicaid coverage through contracts with MCOs. *See id.*; *see also id.* at 40,992.

The BBA "significantly renovated the Medicaid managed care program." *Id.* at 40,990. In pertinent part, the BBA required MCOs "to establish internal grievance procedures under which Medicaid *enrollees* . . . may challenge the denial of coverage of, or payment for, medical assistance." *See* 42 C.F.R. § 438.400(a)(3) (emphasis added); *see also* 67 Fed. Reg. at 41,054. An applicable regulation clarified that each MCO "must have a system in place for *enrollees* that includes a grievance process, an appeal process, and access to the State's fair hearing system." 42 C.F.R. § 438.402 (emphasis added).

It was against this backdrop that the drafters of 42 C.F.R. § 431.244(f) "proposed conforming amendments . . . to reflect changes in terminology and other new provisions enacted in the BBA." 67 Fed. Reg. at 41,054. In particular, the drafters "made conforming changes to the fair hearing regulations in [§ 431.244], to reflect the MCO grievance and appeals process." *Id.* at 41,054-55. Those changes appear in the current version of the regulation, which, by its terms, now explicitly applies only to Medicaid "enrollees."

We find nothing in the foregoing drafting history which suggests that the relevant federal agency intended to strip non-MCO enrollees of their long-standing statutory right to "final administrative action" "[o]rdinarily, within 90 days." *See* 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.244(f). As noted, the agency itself described the 2001 revision to the regulation as a mere "conforming" amendment. 67 Fed. Reg. at 41,054. Defendants offer no evidence that the agency additionally intended its "conforming" amendment to eviscerate the statutory fair hearing right enjoyed by the millions of people nationwide who are not enrolled in MCOs.[12]

---

[12] According to government statistics, as of July 2010, approximately 15.6 million people nationwide were enrolled in Medicaid, but were not enrolled in MCOs. *See* Centers for

In addition, we note that another regulation defines the term "enrollee" as encompassing persons beyond those who are enrolled in MCOs. Part 1003 of Title 42 of the Code of Federal Regulations in part provides for the imposition of civil money penalties against persons who "[s]ubstantially fail to provide an *enrollee* with required medically necessary items and services." *See* 42 C.F.R. § 1003.100(b)(1)(vii) (emphasis added); *see also id.* § 1003.103(f)(1)(i). For purposes of Part 1003, "enrollee" is defined broadly as "an individual who is eligible for . . . Medicaid and who enters into an agreement to receive services from a contracting organization that contracts with the Department under . . . title XIX of the Act." 42 C.F.R. § 1003.101.[13] We fail to see why a similarly broad definition of "enrollee" would not apply in the context of the statutory right at issue here. That right, after all, aims to help individuals secure the provision of Medicaid-funded services to which they are entitled, just as does Part 1003.

In light of the foregoing, we conclude that the regulation applies to all Medicaid "enrollees." The District Court's injunction thus is not overbroad on the ground that it covers such persons. And we note that Defendants do not dispute that the certified class consists only of persons who, at a minimum, are Medicaid "enrollees."[14]

---

Medicare & Medicaid Services, *Medicaid Managed Care Enrollment as of July 1, 2010*, *available at* https://www.cms.gov/Research-Statistics-Data-and-Systems/Computer-Data-and-Systems/MedicaidDataSourcesGenInfo/Downloads/2010July1.pdf.

[13] The same regulation defines "contracting organization" as "a public or private entity . . . which has contracted with the Department or a State to furnish services to . . . Medicaid recipients." 42 C.F.R. § 1003.101.

[14] As noted, the District Court certified a class of

all New York City applicants for, and recipients of, Medicaid-funded home health services, who have requested or will request fair hearings challenging adverse actions regarding their home health services and who are not solely challenging any decision regarding Medicaid eligibility, and

### IV.    *Conclusion.*

We have considered the parties' remaining contentions, and find them to be moot or without merit.

To summarize, we hold as follows:

**(a)** Section 1396a(a)(3) of Title 42 of the U.S. Code, as construed by 42 C.F.R. § 431.244(f), creates a right—enforceable under 42 U.S.C. § 1983—to have Medicaid fair hearings held, and fair hearing decisions issued, within the regulation's specified time frame;

**(b)** The District Court's injunction is overbroad because it compels Defendants to implement the relief ordered in fair hearing decisions within the regulation's 90-day time frame, despite the fact that the regulation contemplates no such obligation.

On remand, the District Court must craft an order of injunctive relief consistent with this opinion.

For the reasons stated above, the Order of the District Court is **AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED** for further proceedings.

---

who do not receive final administrative action from Defendants within ninety days of their requests for fair hearings.

2011 Order at 2 ¶ 5.