588

[901 NE2d 1268, 873 NYS2d 517]

RICHARD S. LAWRENCE et al., as Preliminary Executors of ALICE LAWRENCE, Deceased, Appellants, v GRAUBARD MILLER et al., Respondents.

In the Matter of the Estate of SYLVAN LAWRENCE, Deceased. GRAUBARD MILLER, Respondent; RICHARD S. LAWRENCE et al., as Preliminary Executors of ALICE LAWRENCE, Deceased, et al., Appellants.

In the Matter of the Estate of SYLVAN LAWRENCE, Deceased. GRAUBARD MILLER et al., Respondents; RICHARD S. LAWRENCE et al., as Preliminary Executors of ALICE LAWRENCE, Deceased, Appellants.

Argued October 23, 2008; decided December 2, 2008

**POINTS OF COUNSEL**

*Greenberg Traurig, LLP,* New York City (*Leslie D. Corwin, Israel Rubin* and *Rachel Sims* of counsel), for Richard S. Lawrence and another, as preliminary executors of Alice Lawrence, deceased, appellants. I. The appellate court erred in finding that issues of fact preclude a finding that the revised fee agreement is unconscionable as a matter of law. (*Gillman v Chase Manhattan Bank,* 73 NY2d 1; *State of New York v Wolowitz,* 96 AD2d 47; *Brower v Gateway 2000,* 246 AD2d 246; *Matter of Teleserve Sys. [MCI Telecom. Corp.],* 230 AD2d 585; *Gair v Peck,* 6 NY2d 97, 361 US 374; *Ween v Dow,* 35 AD3d 58; *King v Fox,* 7 NY3d 181; *Belzer v Bollea,* 150 Misc 2d 925.) II. This Court should find, as a matter of law, that the revised fee agreement is unconscionable. (*Gillman v Chase Manhattan Bank,* 73 NY2d 1; *Brower v Gateway 2000,* 246 AD2d 246; *King v Fox,* 7 NY3d 181; *Gair v Peck,* 6 NY2d 97; *Ween v Dow,* 35 AD3d 58; *Matter of Cooperman,* 83 NY2d 465; *Meinhard v Salmon,* 249 NY 458; *Matter of Lanyi,* 147 AD2d 644; *Agusta & Ross v Trancamp Contr. Corp.,* 193 Misc 2d 781; *Matter of Howell,* 215 NY 466.)

*Greenfield Stein & Senior, LLP,* New York City (*Norman A. Senior, Gary B. Freidman* and *Jeffery H. Sheetz* of counsel), for Richard S. Lawrence, individually and as executor of the estate of Sylvan Lawrence, deceased, appellant. I. Graubard Miller's claim for tortious interference should be dismissed because the contract it seeks to enforce is unconscionable. (*Matter of Cooperman,* 83 NY2d 465; *King v Fox,* 7 NY3d 181; *Shaw v Manufacturers Hanover Trust Co.,* 68 NY2d 172; *Matter of Howell,* 215 NY 466; *Matter of Schanzer,* 7 AD2d 275, 8 NY2d 972; *Gair v Peck,* 6 NY2d 97; *Matter of Fitzsimons,* 174 NY 15; *Morehouse v Brooklyn Hgts. R.R. Co.,* 185 NY 520; *Gillman v Chase Manhattan Bank,* 73 NY2d 1; *Landsman v Moss,* 180 AD2d 718.) II. Because of the conduct of Messrs. Chill and Mallis and Ms. Reich, Grauard Miller is not entitled to any legal fees. (*Gair v Peck,* 6 NY2d 97; *Baye v Grindlinger,* 78 AD2d 690; *Petition of Rosenman & Colin,* 668 F Supp 788, 850 F2d 57; *Matter of Sherbunt,* 134 AD2d 723; *Matter of Buchyn,* 300 AD2d 739; *Shelton v Shelton,* 151 AD2d 659; *Quinn v Walsh,* 18 AD3d 638; *Matter of Winston,* 214 AD2d 677; *Bank of Commerce v De Santis,* 114 Misc 2d 491; *In re Securities Group,* 926 F2d 1051.) III. Graubard Miller has failed to state a claim under SCPA 2110. (*Matter of Warhol,* 165 Misc 2d 726; *Matter of Duke,* 297 AD2d 469; *Matter of Papadogiannis,* 196 AD2d 871; *Matter of Verplanck,* 151 AD2d 767; *Matter of Bloomingdale,* 172 Misc 218; *Matter of Potts,* 213 App Div 59, 241 NY 593; *Matter of Freeman,* 34 NY2d 1; *Matter of Schoonheim,* 158 AD2d 183.)

*Berchem, Moses & Devlin, P.C.* (*Robert L. Berchem,* of the Connecticut bar, admitted pro hac vice, of counsel), *Kim Koopersmith, P.C.,* New York City, and *Akin Gump Strauss Hauer & Feld LLP* (*Elizabeth H. Raskin* of counsel), for Marta Jo Lawrence and another, residuary legatees. I. A contract may be unenforceable on the grounds of substantive unconscionability alone. (*Gillman v Chase Manhattan Bank,* 73 NY2d 1; *Gair v Peck,* 6 NY2d 97, 361 US 374; *King v Fox,* 7 NY3d 181; *Shaw v Manufacturers Hanover Trust Co.,* 68 NY2d 172; *Ween v Dow,* 35 AD3d 58.) II. The revised fee agreement is unconscionable as a matter of law.

*Flemming Zulack Williamson Zauderer LLP,* New York City (*Mark C. Zauderer* of counsel), *Steven Mallis,* pro se, and *Jones Day,* Washington D.C. (*Michael A. Carvin* of counsel), for respondents. I. Under the standard of review applicable to a motion to dismiss, Graubard Miller is entitled to the benefit of every possible favorable inference. (*Nonnon v City of New York,*

9 NY3d 825; *511 W. 232nd Owners Corp. v Jennifer Realty Co.,* 98 NY2d 144; *Tenuto v Lederle Labs., Div. of Am. Cyanamid Co.,* 90 NY2d 606; *Leon v Martinez,* 84 NY2d 83; *Rovello v Orofino Realty Co.,* 40 NY2d 633.) II. The contingency fee agreement is not unconscionable as a matter of law. (*King v Fox,* 418 F3d 121, 7 NY3d 181; *Matter of Fitzsimons,* 174 NY 15; *Gross v Russo,* 47 AD2d 655; *Nonnon v City of New York,* 9 NY3d 825; *Matter of Peters [Bachmann],* 271 App Div 518, 296 NY 974; *Matter of Sasson,* 231 App Div 524; *Murray v Waring Hat Mfg. Co.,* 142 App Div 514; *Syme v Terry & Tench Co.,* 125 App Div 610; *Sea Isle Foods v State of New York,* 40 Misc 2d 872; *Morehouse v Brooklyn Hgts. R.R. Co.,* 123 App Div 680, 195 NY 537.) III. Appellants' unproven allegations of professional misconduct afford no basis for dismissal of the petition. (*Matter of Lanyi,* 147 AD2d 644; *Landsman v Moss,* 180 AD2d 718; *Wade v Clemmons,* 84 Misc 2d 822; *King v Fox,* 7 NY3d 181; *Matter of Fitzsimons,* 174 NY 15; *Gross v Russo,* 47 AD2d 655; *Matter of Phillips,* 284 AD2d 897; *Matter of Lippman,* 232 AD2d 69; *Radin v Opperman,* 64 AD2d 820; *Matter of Buchyn,* 300 AD2d 739.) IV. Graubard Miller's claim for legal fees under SCPA 2110 should not be dismissed. (*Matter of Graves,* 197 Misc 638; *Matter of Quattrocchi,* 293 AD2d 481; *Rosenman & Colin v Winston,* 205 AD2d 451; *Matter of Burns,* 126 AD2d 809; *Matter of Bellinger,* 55 AD2d 448; *Abramowitz v American Gen. Contr. Co.,* 239 AD2d 303; *Matter of Potts,* 213 App Div 59, 241 NY 593; *Matter of Duke,* 297 AD2d 469.) V. This Court lacks the constitutional authority to grant appellants' motions to dismiss. (*King v Fox,* 418 F3d 121, 7 NY3d 181; *Morehouse v Brooklyn Hgts. R.R. Co.,* 185 NY 520; *Matter of Fitzsimons,* 174 NY 15; *Laidlaw Transp. v Helena Chem. Co.,* 255 AD2d 869; *Matter of State of New York v Avco Fin. Serv. of N.Y.,* 50 NY2d 383; *State of New York v Wolowitz,* 96 AD2d 47; *Magraw v Hann,* 263 NY 674; *Bowlby v McQuail,* 240 NY 684; *Matter of Martin,* 219 NY 557; *Palmer v State of New York,* 217 NY 601.)

**OPINION OF THE COURT**

JONES, J.

Sylvan Lawrence died testate in 1981, leaving his estate to his wife, Alice Lawrence, and three children. In 1982, decedent's will was admitted to probate and decedent's brother, Seymour

Cohn, was named executor.[1] In 1983, Mrs. Lawrence retained the law firm of Graubard Miller, on an hourly basis, to represent her in matters related to decedent's estate, including her lawsuit regarding Mr. Cohn's administration of decedent's estate. Mrs. Lawrence's retention of Graubard was confirmed in a letter dated August 4, 1983. Over the next 21 years, more than $350 million in distributions were made to the beneficiaries of the estate, and the firm billed Mrs. Lawrence over $18 million in legal fees. Mrs. Lawrence also paid, unbeknownst to the firm, over $5 million in "bonuses" or "gifts" to three of the firm's partners and approximately $2.7 million in taxes on those bonuses or gifts.

In November 2004, Mrs. Lawrence, facing legal bills which, according to her, had increased to almost $1 million per quarter, asked the firm about the possibility of entering a new fee arrangement. By letter dated January 14, 2005, shortly before commencement of trial in connection with decedent's estate, Mrs. Lawrence and Graubard entered a revised retainer agreement, providing that (1) for one year commencing January 1, 2005, Mrs. Lawrence would pay the firm a flat fee not exceeding $300,000 per quarter, (2) hourly billings would be capped at $1.2 million and (3) if additional monies were distributed to beneficiaries of decedent's estate, or if Mrs. Lawrence settled her case against Mr. Cohn's estate, Mrs. Lawrence was to pay from her share 40% of the total distributed to the beneficiaries, minus any amount she had already paid the firm under the revised retainer agreement.

On May 18, 2005, five months after the revised retainer agreement became effective, the firm, on behalf of Mrs. Lawrence, reached a settlement by which Mr. Cohn's estate agreed to pay decedent's estate approximately $104.8 million. Under the terms of the revised retainer agreement, Mrs. Lawrence was required to pay legal fees in excess of $40 million. She refused to pay and on August 5, 2005, Graubard commenced a proceeding in Surrogate's Court to compel payment of its legal fees. Four days later, the firm amended its petition, which further alleged that appellant Richard Lawrence is liable to Graubard for its legal fees both individually, under a theory of tortious interference with contractual relationship, and as successor executor pursuant to Surrogate's Court Procedure Act § 2110 and other applicable law. By order dated September 12, 2005, Surrogate Renee

---

1. In late 2003, Mr. Cohn died and decedent's son, appellant Richard Lawrence, took over as successor executor.

R. Roth referred Graubard's contract enforcement proceeding to the Honorable Howard A. Levine (the Referee) to hear and report.

On September 13, 2005, Mrs. Lawrence brought suit in Supreme Court against the Graubard firm and three individual partners who had received over $5 million in bonuses or gifts from Mrs. Lawrence. This suit seeks rescission of the revised retainer agreement, return of all fees paid to Graubard Miller during the entire 22-year period it represented Mrs. Lawrence, as well as the monies she paid separately to the three partners, on the ground that the revised retainer agreement is unconscionable as a matter of law. By order of Supreme Court dated December 14, 2005, Justice Helen E. Freedman directed that Mrs. Lawrence's rescission action be removed to Surrogate's Court pursuant to CPLR 325 (e). Thereafter, Surrogate Roth referred this action to the Referee, who also had before him the firm's contract enforcement proceeding.

Meanwhile, on or about October 24, 2005, Alice Lawrence and Richard Lawrence, individually and as successor executor to decedent's estate, each moved before the Referee to dismiss Graubard's petition under CPLR 3211. The firm countered by cross-moving for partial summary judgment dismissing Mrs. Lawrence's counterclaim for a refund of all fees previously paid to Graubard and three of its partners.

Taking into account the standard of review applicable to CPLR 3211 motions to dismiss, the Referee recommended denying the motions to dismiss the petition. In support of this recommendation, the Referee, noting the general rule that retainer agreements must be fair and reasonable to the client, explained that determining whether the revised retainer agreement is unconscionable "will require evidence concerning all factors relevant to Mrs. Lawrence's capacity, her understanding of the terms of the revised agreement, the completeness of the attorneys' disclosure and whether they exploited their preexisting confidential relationship with her to obtain the favorable terms of the agreement," and that an "excessive fee" determination pursuant to Code of Professional Responsibility DR 2-106 (22 NYCRR 1200.11) shall be made "after a review of the facts." The Referee further noted the presence of numerous questions of fact, which cannot be resolved on a pre-answer motion to dismiss. By decision dated July 10, 2006, Surrogate Roth granted motions to confirm the Referee's report and adopted his recommendations in their entirety.

By decision and order entered November 27, 2007, the Appellate Division, in a 4-1 decision, affirmed (*see* 48 AD3d 1 [1st Dept 2007]). The majority, noting that unconscionability determinations require a showing of both procedural and substantive unconscionability, found that

> "while at first blush [the revised retainer] agreement might arguably seem excessive and invite skepticism, before any determination regarding unconscionability can be made, the circumstances underlying the agreement must be fully developed, including any discussions leading to the agreement, as well as the prospects at that time of successfully concluding the litigation in favor of Mrs. Lawrence" (48 AD3d at 4).

Similarly, the majority found that

> "Mrs. Lawrence's claims that the so-called 'bonuses' or 'gifts,' as well as the agreement itself, violated attorney disciplinary rules against self dealing, etc., cannot be resolved without determining [certain factual issues, i.e.,] Mrs. Lawrence's capacity . . . ; what she was advised; and whether she understood the ramifications of the revised agreement" (*id.* at 8).

The dissenting Justice, noting that prior to the revised retainer agreement, Mrs. Lawrence had declined a $60 million settlement offer from Mr. Cohn's estate, concluded that a court "may find a provision of a contract so outrageous as to warrant holding it unenforceable on the grounds of substantive unconscionability alone" (*id.* at 18). He would have ruled that the firm is not entitled to any legal fees under the revised retainer agreement, and further, that it would be appropriate to refer Mrs. Lawrence's complaints regarding the three partners to the Departmental Disciplinary Committee.

The Appellate Division granted the Lawrences leave to appeal from its order and certified the following question to this Court: "Was the decision and order of this Court, to the extent that it affirmed the orders of the Surrogate's Court, properly made?"[2] We now affirm and answer the certified question in the affirmative.

---

**2.** Mrs. Lawrence died after the Appellate Division granted leave to appeal. The preliminary executors of her estate have been substituted. Further, the Appellate Division's leave grant included so much of its order as affirmed Surrogate's Court orders denying Mrs. Lawrence's challenge to a Referee's or-

Whether the revised retainer agreement is unenforceable because it was unconscionable when entered into, or became so in retrospect, is the issue before us on appellants' motions to dismiss the firm's petition to compel payment of legal fees. On a motion to dismiss a petition we, of course, must accept the facts alleged in the petition as true, petitioner must be afforded every possible favorable inference, and we must determine whether the facts alleged by petitioner fit within any cognizable legal theory (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). Affidavits submitted by a respondent will almost never warrant dismissal under CPLR 3211 *unless* they "establish conclusively that [petitioner] has no [claim or] cause of action" (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 636 [1976]).

It is well settled that an unconscionable contract is generally defined

> "as one which is so grossly unreasonable as to be [unenforceable according to its literal terms] because of an absence of meaningful choice on the part of one of the parties ['procedural unconscionability'] together with contract terms which are unreasonably favorable to the other party ['substantive unconscionability']" (*King v Fox*, 7 NY3d 181, 191 [2006]; *see Gillman v Chase Manhattan Bank*, 73 NY2d 1, 10-11 [1988]).[3]

As noted above, a fee arrangement can be deemed unconscionable when entered into or in retrospect.

In light of the applicable standard of review in resolving a motion to dismiss a petition, we conclude that the facts and circumstances surrounding the revised retainer agreement have not, at this time, been sufficiently developed to determine whether or not the agreement was unconscionable at the time it was made. Petitioner Graubard Miller has not had the opportunity to lay bare admissible proof as to, among other things, whether the revised retainer agreement was fair, reasonable, and fully known and understood by Mrs. Lawrence. Further, appellants have not submitted admissible, conclusive proof that

der directing her appearance at a deposition and removing the action, *Lawrence v Graubard Miller*, from Supreme Court to Surrogate's Court. Because the appellants do not address these issues in their briefs, we do not reach them.

**3.** An unconscionable contract is usually voidable since a party to a contract has the power to validate, ratify or avoid it (*see* 1 Corbin on Contracts § 1.6, at 17-18 [1993 rev ed]).

the firm's petition is somehow deficient and/or that dismissal is otherwise warranted.

Given the courts' role in closely scrutinizing contingent fee agreements between attorneys and their clients (*see Shaw v Manufacturers Hanover Trust Co.*, 68 NY2d 172, 176 [1986]), even if such an agreement is not determined to be unconscionable as of its inception, that is not the end of a court's analysis. Our case law clearly provides that circumstances arising after contract formation can render a contingent fee agreement—not unconscionable when entered into—unenforceable where the amount of the fee, combined with the large percentage of the recovery it represents, seems disproportionate to the value of the services rendered (*see Gair v Peck*, 6 NY2d 97, 106-107 [1959] ["there comes a point where the amounts to be received by attorneys under contingent fee contracts are large enough to be (unenforceable) under the circumstances of the case" (*id.* at 107)]; *see also King*, 7 NY3d at 192 [determining whether a contingent fee agreement is unconscionable requires an analysis of "the facts and circumstances surrounding the agreement, including the parties' intent and the value of the attorney's services in proportion to the fees charged, in hindsight"]).[4]

Here, the firm and Mrs. Lawrence—after a long professional relationship, and $18 million in fees—entered the revised retainer agreement which provided for a 40% contingent fee. Five months later, Graubard secured a settlement with the Cohn estate exceeding $100 million and, pursuant to the agreement, the firm sought to collect legal fees exceeding $40 million from Mrs. Lawrence. On its face, the amount of the fee seems disproportionate to the five months of work since the agreement's revision. However, we have not been presented with facts to refute or support this hypothesis, or to evaluate the agreement's unconscionability.

Because questions which cannot be resolved on a motion to dismiss are present and because a full record has not been

---

4. In general, agreements entered into between competent adults, where there is no deception or overreaching in their making, should be enforced as written. Accordingly, the power to invalidate fee agreements with hindsight should be exercised only with great caution. It is not unconscionable for an attorney to recover much more than he or she could possibly have earned at an hourly rate. Indeed, the contingency system cannot work if lawyers do not sometimes get very lucrative fees, for that is what makes them willing to take the risk—a risk that often becomes reality—that they will do much work and earn nothing. If courts become too preoccupied with the ratio of fees to hours, contingency fee lawyers may run up hours just to justify their fees, or may lose interest in getting the largest possible recoveries for their clients.

developed, dismissal of the petition is not warranted at this time. Moreover, until a determination regarding the validity of the agreement is made, appellants' claims concerning the excessiveness of the contingent fee, the partners' acceptance of the bonuses or gifts and the alleged violation of certain disciplinary rules, as well as Mr. Lawrence's motion to dismiss Graubard's tortious interference with contract claim, cannot be resolved.

Accordingly, the order of the Appellate Division should be affirmed, without costs, and the certified question answered in the affirmative.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order affirmed, etc.