■ In the Matter of Sylvan Lawrence, Deceased. Richard S. Lawrence et al., Appellants-Respondents, v Graubard Miller et al., Respondents-Appellants, and Richard S. Lawrence et al., Intervenors-Appellants-Respondents. [965 NYS2d 495]—

Amended decree, Surrogate's Court, New York County (Nora S. Anderson, S.), entered on or about October 14, 2011, which granted the intervenor children's applications to intervene in this proceeding, awarded defendant law firm a fee of $15,837,374.02, and directed the individual defendants to return to the plaintiff executors cash gifts in the amount of $5.05 mil-

lion, unanimously modified, on the law, to reduce the law firm's fee award to the hourly fees due under the original retainer agreement, remand for further proceedings to determine that amount, and award interest on the law firm's fees from July 29, 2005, the date of the breach of the revised retainer agreement, and otherwise affirmed, without costs. Order, Surrogate's Court, New York County (Troy K. Webber, S.), entered on or about October 1, 2009, which, to the extent appealed from, confirmed that portion of the Referee's report dated October 30, 2008 recommending as a discovery sanction the waiver of objections under the Dead Man's Statute (CPLR 4519) in lieu of the more severe sanction of striking the widow's pleadings in both the contract enforcement proceeding and the rescission action, unanimously affirmed, without costs.

Beginning in 1983, defendant law firm represented the family of Sylvan Lawrence in litigation concerning the administration of his estate. In 1998, Alice Lawrence, Sylvan's widow, paid three of the firm's partners, the individual defendants, a bonus or gift totaling $5.05 million and also paid the firm $400,000 as a bonus or gift. By the end of 2004, the widow had paid, approximately $22 million in legal fees on an hourly fee basis.

In the hope of reducing her anticipated legal fees in the ongoing litigation, the widow entered into a revised retainer agreement with the law firm in January 2005. The revised retainer agreement provided, inter alia, for a 40% contingency fee. In May 2005, the estate litigation settled with a payment to the estate of more than $111 million and, in accordance with the revised retainer agreement, the firm sought a fee of 40% of that amount. When the widow refused to pay the 40% contingency fee, this litigation resulted, in which, among other relief, the return of the gifts the widow made in 1998 is sought.

The claims relating to the gifts the widow made to the three individual defendants are not time-barred. Rather, they were tolled under the doctrine of continuous representation (*Glamm v Allen*, 57 NY2d 87, 93-94 [1982]). Contrary to the individual defendants' contention, the doctrine applies where, as here, the claims involve self-dealing at the expense of a client in connection with a particular subject matter (*cf. Woyciesjes v Schering-Plough Corp.*, 151 AD2d 1014, 1014-1015 [4th Dept 1989], *appeal dismissed* 74 NY2d 894 [1989]). As to the merits, the individual defendants failed to meet their burden of showing by clear and convincing evidence that the widow gave the gifts willingly and knowingly (*Matter of Clines*, 226 AD2d 269, 270 [1st Dept 1996], *lv dismissed* 88 NY2d 1016 [1996]). Indeed, the secrecy surrounding the gifts, and their extraordinary amounts,

which the individual defendants accepted without advising the widow to seek independent counsel, preclude a finding in the individual defendants' favor (*see* Code of Professional Responsibility EC 5-5).

The revised retainer agreement is both procedurally and substantively unconscionable (*Lawrence v Graubard Miller*, 48 AD3d 1, 6 [1st Dept 2007], *affd* 11 NY3d 588 [2008]). The evidence shows that the widow believed that under the contingency arrangement, she would receive the "lion's share" of any recovery. In fact, as it operated, the law firm obtained over 50% of the widow's share of proceeds. Thus, the law firm failed to show that the widow fully knew and understood the terms of the retainer agreement—an agreement she entered into in an effort to reduce her legal fees (*see Shaw v Manufacturers Hanover Trust Co.*, 68 NY2d 172, 176 [1986]).

In considering the substantive unconscionability of the revised retainer agreement, the Referee correctly considered such factors as the proportionality of the fee to the value of the professional services rendered (*see King v Fox*, 7 NY3d 181, 191 [2006]; *see also Lawrence v Graubard Miller*, 48 AD3d 1 [2007], *affd* 11 NY3d 588 [2008], *supra*; *Gair v Peck*, 6 NY2d 97 [1959], *cert denied* 361 US 374 [1960]), the sheer amount of the fee (*see King* at 192; *see also Gair* at 106), and the risks and rewards to the attorney upon entering into the contingency agreement (*see Lawrence*, 48 AD3d at 7-8). With regard to the last factor, the law firm had internally assessed the estate's claims to be worth approximately $47 million so that the contingency fee provision in the revised retainer would have meant a fee of about $19 million. Contrary to the law firm's assertion, on this record it seems highly unlikely that the firm undertook a significant risk of losing a substantial amount of fees as a result of the revised retainer agreement's contingency provision. Rather, the Referee accurately characterized this attempt by the law firm to justify its action as "nothing but a self-serving afterthought."

The amount the law firm seeks ($44 million) is also disproportionate to the value of the services rendered (approximately $1.7 million) (*see Lawrence v Graubard Miller*, 11 NY3d at 596). The record shows that the law firm spent a total of 3,795 hours on the litigation after the revised retainer agreement became effective, resulting in an hourly rate of $11,000, which, as the Referee stated, is "an astounding rate of return for legal services."

However, the remedy recommended by the Referee and adopted by the Surrogate—namely, a new "reasonable" fee arrangement for the parties—was improper. Where, as here, there

is a preexisting, valid retainer agreement, the proper remedy is to revert to the original agreement (*Matter of Smith [Raymond]*, 214 App Div 622 [1st Dept 1925], *appeal dismissed* 242 NY 534 [1926]; *Naiman v New York Univ. Hosps. Ctr.*, 351 F Supp 2d 257 [SD NY 2005]). For the reasons found by the Referee, we reject the firm's suggestion that it receive a reduced contingency fee. Accordingly, the matter is remanded for the determination of the fees due the law firm under the original retainer agreement. Given that the firm is entitled to fees under the original retainer agreement, it is also entitled to prejudgment interest from the date of the breach (*see* CPLR 5001).

Because the individual defendants acted alone, and in secret from the rest of the law firm, with respect to the gifts, we decline to rule that such conduct by the individual defendants results in the firm's forfeiture of its lawful fees from the date the individual defendants received the gifts.

The issue of the propriety of allowing the widow's children individually to intervene in the action is academic and need not be addressed. Even if we were to reach the merits of the underlying claims, we would find them without merit.

Finally, the record shows that the court providently exercised its discretion in imposing a discovery sanction for the widow's wilful and contumacious conduct in avoiding her deposition. The sanction imposed sufficiently mitigated the prejudice arising from this misconduct (*see* CPLR 3126; *see generally Sage Realty Corp. v Proskauer Rose*, 275 AD2d 11, 17-18 [1st Dept 2000], *lv dismissed* 96 NY2d 937 [2001]). Concur—Friedman, J.P., Moskowitz, Freedman and Richter, JJ.