OPINION OF THE COURT
Lucy Billings, J.
Defendant moves to dismiss the complaint based on documentary evidence and failure to state a claim. (CPLR 3211 [a] [1], [7].) Plaintiff claims defendant violated her rights, as a resident of defendant’s housing, to opportunities for employment by defendant or its contractors under 12 USC § 1701u because defendant informed its Office of Resident Economic Empowerment and Sustainability (REES), which administers defendant’s resident employment program, of her rent arrears. This program under 12 USC § 1701u, section 3 of the federal Housing and Urban Development Act of 1968, is referred to as the section 3 program. Plaintiff seeks lost wages for the claimed violation of her federal rights.
I. The Undisputed Documentary Evidence and Plaintiffs Factual Allegations
Plaintiff applied for defendant’s resident employment program on September 6, 2011, and again on April 5, 2012. Between plaintiffs two applications, in early 2012, defendant commenced a proceeding against plaintiff claiming her nonpayment of rent. The parties settled the proceeding March 28, 2012, through a stipulation that provided for plaintiffs payment of $152 to defendant and its credit of $123 to plaintiff. At this point, defendant implicitly concedes it would have been inaccurate to convey that plaintiffs rent was in arrears. In fact plaintiff’s exhibits to her complaint show that on March 30, 2012, defendant’s employee at plaintiffs housing development notified REES in writing that the nonpayment proceeding was discontinued, and plaintiff was “at zero balance as a result of a credit due to the account, along with a payment in court.” The outcome of the nonpayment proceeding further suggests, as plaintiff insists, that her rent was not in arrears previously either, or, if it was, the amount was negligible, as well as disputed.
*238 In contrast to defendant’s documentary evidence, the complaint alleges, however, that a REES representative notified plaintiff that in June 2011 her application for a job opportunity was “discontinued . . . due to rent arrears.” (Verified complaint ¶ 4.) The complaint then alleges that between June 2011 and March 2012 she repeatedly attempted to resolve defendant’s efforts to collect rent arrears from her that she did not owe. Based on the complaint’s exhibits, the dispute only was resolved through the stipulation dated March 28, 2012, in the nonpayment proceeding.
In sum, plaintiff’s allegations regarding the REES representative’s notification to plaintiff in June 2011 raise an inference that defendant conveyed to REES that plaintiffs rent was in arrears at a point when she disputed such a fact. The March 2012 stipulation resolving this dispute further reflects that the true facts may not have sustained defendant’s claim.
Plaintiff does not specifically allege, and defendant’s documentary evidence does not indicate, however, that, as of June 2011, she had applied for a job opportunity in defendant’s resident employment program. Nor does she specifically allege that at any point after September 2011, when she undisputedly applied, defendant then discontinued or denied her application due to rent arrears.
This lack of specificity, however, does not defeat plaintiffs action altogether. For purposes of defendant’s motion to dismiss her action, her allegations that she completed REES’ orientation and in June 2011 was “placed on the list for construction” and “custodial maintenance ... to be the next for hire” may be construed as her completed application for or her enrollment in defendant’s resident employment program in June 2011. (Verified complaint ¶ 3.) This interpretation allows the further inference that the notice of discontinuance due to rent arrears followed the June 2011 application or enrollment.
II. Whether Plaintiff Alleges a Claim under Federal Law A. Violation of 12 USC § 1701u (c) (1) or 24 CFR 135.30 (b) (1) or 135.32 (c)
Assuming defendant discontinued plaintiffs application for or enrollment in defendant’s resident employment program in June 2011 for an unfounded reason, the issue becomes whether defendant owed plaintiff any duty to retain her in the program to the extent of hiring her or assisting her in securing employment. 12 USC § 1701u (c) (1) (A) requires defendant, its contrac *239 tors, and their subcontractors to “make their best efforts . . . to give to low- and very low-income persons the training and employment opportunities generated” by specified federal funding. These efforts must be prioritized to give those opportunities first to residents of defendant’s housing developments where the funding is spent and second to residents of defendant’s other housing developments. (12 USC § 1701u [c] [1] [B]; 24 CFR 135.34 [a] [1].) Although the record does not indicate whether, since June 2011, defendant has spent federal funding subject to section 1701u (c) (l)’s requirements at the housing development where plaintiff resides, plaintiff is a member of at least one of the two priority groups. Defendant’s “responsibility to comply” with 12 USC § 1701u (c) (1) “in its own operations” includes: “Facilitating the training and employment” of its residents. (24 CFR 135.32 [c].)
Defendant may meet the statutory “best efforts” requirement through the employment of defendant’s residents as 30% of employees hired by defendant, its contractors, or their subcontractors. (24 CFR 135.30 [b] [1] [iii].) Thus, even if defendant discontinued training and employment opportunities to plaintiff based on information that was false or that unfairly disparaged her, defendant would not have violated the “best efforts” requirement as long as defendant met this standard. Plaintiff has not alleged that defendant failed to meet this standard.
Nevertheless, defendant’s additional “responsibility” was to facilitate the training and employment of its residents, such as plaintiff. (24 CFR 135.32 [c].) Viewing the complaint and evidence in her favor, defendant discontinued her application for or enrollment in its resident employment program from June 2011 until either September 2011, when defendant shows she subsequently applied, or April 2012, when defendant shows she reapplied and it had notified REES that her rent was not in arrears. This outright discontinuance hardly may be considered facilitating residents’ employment. (Id.)
B. HUD’s Administrative Remedies Do Not Address Plaintiffs Injury
Assuming defendant failed to meet the 30% standard or, by discontinuing plaintiffs application or enrollment, failed to afford the statutory priority or meet defendant’s responsibility to facilitate a resident’s training and employment between June 2011 and April 2012, 12 USC § 170lu provides an administrative remedy. (Marcel v Donovan, 2012 WL 868977, *5, 2012 US Dist LEXIS 34493, *14-16 [ED NY, Mar. 14, 2012, No. 11-CV-1560 (RRM) (VVP)]; *240 Williams v United States Dept. of Hous. & Urban Dev., 2006 WL 2546536, *9, 2006 US Dist LEXIS 62661, *28-30 [ED NY, Sept. 1, 2006, No. 04-CV-3488 (NGG) (RLM)].) Plaintiff may complain to the Assistant Secretary for Equal Opportunity of the United States Department of Housing and Urban Development (HUD). (24 CFR 135.76 [a] [1].) HUD administers the federal funds to which defendant’s resident training and employment obligations are tied. Although plaintiff might “obtain a voluntary and just resolution” from defendant through the HUD process (24 CFR 135.76 [f] [2]), the relief HUD imposes on a public housing authority involuntarily, such as termination, suspension, or limitation of the housing authority’s federal funds, would not provide redress to plaintiff. (24 CFR 135.76 [g]; e.g. Gonzaga Univ. v Doe, 536 US 273, 287-288 [2002]; Alexander v Sandoval, 532 US 275, 289 [2001]; Pennhurst State School & Hospital v Halderman, 451 US 1, 28-29 [1981]; Williams v United States Dept. of Hous. & Urban Dev., 2006 WL 2546536, *9, 2006 US Dist LEXIS 62661, *28-30; see Rhodes v Herz, 84 AD3d 1, 8 [1st Dept 2011]; Delgado v New York City Hous. Auth., 66 AD3d 607, 608 [1st Dept 2009].) She seeks employment based on defendant’s very receipt of federal funds, which if reduced or limited would curtail defendant’s provision of the employment opportunities she seeks.
HUD’s complaint process under 24 CFR 135.76 does not preclude plaintiff from seeking otherwise available redress through the judicial process (24 CFR 135.76 [j]), and thus does not foreclose enforcement of 12 USC § 1701u (c) (1) or a regulation under the statute, if it creates rights enforceable by private individuals. (Alexander v Sandoval, 532 US at 290; Wilder v Virginia Hospital Assn., 496 US 498, 508 n 9 [1990]; Williams v United States Dept. of Hous. & Urban Dev., 2006 WL 2546536, *9, 2006 US Dist LEXIS 62661, *28-30.) Plaintiff must demonstrate a remediable injury, however, for which redress is available.
C. Plaintiffs Injury
Although plaintiff has not alleged that defendant failed to meet the 30% standard, such an allegation likely is impossible without disclosure. (CPLR 3211 [d]; Amsellem v Host Marriott Corp., 280 AD2d 357, 359 [1st Dept 2001]; Cerchia v V.A. Mesa, Inc., 191 AD2d 377, 378 [1st Dept 1993]; Putter v North Shore Univ. Hosp., 25 AD3d 539, 540 [2d Dept 2006]; Bordan v North Shore Univ. Hosp., 275 AD2d 335, 336 [2d Dept 2000]; see Vasquez v Heidelberg Harris, 265 AD2d 225 [1st Dept 1999].) In *241 any event, she does allege that defendant removed her from the priority group (12 USC § 1701u [c] [1] [B]), and failed to meet its “responsibility” to facilitate the training and employment of its residents. (24 CFR 135.32 [c].) To demonstrate an injury from any such failure, she must show that, had she not been discontinued from the resident employment program in June 2011, further training or jobs would have been available to her between then and April 2012, after which defendant had corrected any misinformation about her rent arrears, she reapplied, and she alleges no subsequent discontinuance.
Plaintiff alleges that she completed a resident employment program orientation and was “on the list” for construction and custodial maintenance “to be the next for hire.” (Verified complaint ¶ 3.) Regarding whether any further training or any jobs in those capacities would have been available to her between June 2011 and April 2012, in opposition to defendant’s motion, plaintiff presents an unsworn statement signed by Christine M. Greene, construction health and safety technician, professional safety consultant, licensed site safety manager, and authorized Occupational Safety and Health Administration (OSHA) trainer, of Sudden Safety Consultants. Greene’s address is on Fifth Avenue near 140th Street in the northern section of the Harlem neighborhood in New York County, approximately 20 blocks from plaintiff’s residence near Tenth Avenue on 125th Street in the southwestern section of Harlem. The letterhead identifies Sudden Safety Consultants as a subsidiary of New Millennium Builders, LLC, offering “OSHA and Scaffold Training” and “NYC Dept of Buildings Courses.” Referring to plaintiff, Greene states:
“Ms. Smith approached me regarding a job and seemed eager to learn more about construction. Ms. Smith seemed to have an excellent work ethic, as well as a good attitude so I was ecstatic to have found placement for her in our construction company, New Millennium Builders, LLC. . . .
“ . . . As a participant in the Section 3 - Resident Employment Services Program for individuals living in NYCHA [New York City Housing Authority] buildings, a placement had been found for Ms. Smith on one of our local projects in June 2011. Ms. Smith lost her standing in the program, however, and therefore could not be placed.”
Plaintiff, in opposing defendant’s motion to dismiss the complaint, unlike defendant supporting the motion, may supple *242 ment her pleading with admissible evidence. (Nonnon v City of New York, 9 NY3d 825, 827 [2007]; Cron v Hargro Fabrics, 91 NY2d 362, 366 n [1998]; Ray v Ray, 108 AD3d 449, 452 [1st Dept 2013]; Thomas v Thomas, 70 AD3d 588, 591 [1st Dept 2010].) If sworn, Greene’s statement would show that “a participant in the Section 3—Resident Employment Services Program for individuals living in NYCHA buildings” had a job for plaintiff on a local construction project in June 2011, but, even though she met “the qualifications of the position to be filled,” did not place her in it solely because defendant had discontinued her eligibility. (24 CFR 135.34 [c].)
Although defendant insists that nothing prevented an employer from hiring plaintiff, which well may have been true outside defendant’s construction projects and in private employment, the statement from Sudden Safety Consultants directly contradicts this contention regarding a contractor in defendant’s resident employment services program. Defendant’s Assistant Director of Job Generation for REES attests, nonetheless, that its records do not disclose New Millennium Builders or Sudden Safety Consultants as such a contractor. Even if this account of defendant’s records without producing them or laying a foundation for their admissibility (e.g. CPLR 4518 [a]) was not inadmissible hearsay, defendant’s affidavit contradicting plaintiffs claims may not be considered to support a motion to dismiss claims under CPLR 3211 (a) (1) or (7). (Lawrence v Graubard Miller, 11 NY3d 588, 595 [2008]; Correa v Orient-Express Hotels, Inc., 84 AD3d 651 [1st Dept 2011]; Tsimerman v Janoff, 40 AD3d 242 [1st Dept 2007]; Weil, Gotshal & Manges, LLP v Fashion Boutique of Short Hills, Inc., 10 AD3d 267, 271 [1st Dept 2004]; see Miglino v Bally Total Fitness of Greater N.Y., Inc., 20 NY3d 342, 351 [2013]; Regini v Board of Mgrs. of Loft Space Condominium, 107 AD3d 496, 497 [1st Dept 2013]; Flowers v 73rd Townhouse LLC, 99 AD3d 431 [1st Dept 2012]; Solomons v Douglas Elliman LLC, 94 AD3d 468, 469 [1st Dept 2012].)
Defendant also questions whether New Millennium Builders or Sudden Safety Consultants actually offered plaintiff employment. As defendant concedes, however, upon its motion to dismiss the complaint pursuant to CPLR 3211 (a) (7), the court must accept plaintiff’s allegations as true, liberally construe them, and draw all reasonable inferences in her favor. (Matter of Walton v New York State Dept. of Correctional Servs., 13 NY3d 475, 484 [2009]; Nonnon v City of New York, 9 NY3d at 827; *243 Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]; Wadiak v Pond Mgt., LLC, 101 AD3d 474, 475 [1st Dept 2012].) Upon defendant’s motion pursuant to CPLR 3211 (a) (1), the court may rely on facts raised by defendant to defeat plaintiffs claims only if established by evidence in admissible documentary form, demonstrating the absence of any material dispute regarding those facts, and completely negating her allegations against defendant. (Lawrence v Graubard Miller, 11 NY3d at 595; Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d at 326; Leon v Martinez, 84 NY2d 83, 87-88 [1994]; Greenapple v Capital One, N.A., 92 AD3d 548, 550 [1st Dept 2012].) The affidavit and questions raised by defendant fall far short of these standards.
Finally, defendant questions whether it referred plaintiff to the contractor or knew of the prospective placement, when both these facts would be within defendant’s knowledge. The latter fact, at minimum, is inferable from the statement by Sudden Safety Consultants that it learned of plaintiffs lost standing in the employment program: information it must have learned from defendant. Nor does defendant cite to any requirement that defendant must refer a prospective employee to a contractor and be informed of the prospective placement before the employee is hired.
D. Judicial Remedy
Were plaintiff to present a sworn statement from Greene or comparable statement from Sudden Safety Consultants or New Millennium Builders in admissible form, the viability of plaintiffs claimed violation of 12 USC § 1701u (c) (1) or 24 CFR 135.30 (b) (1) (iii) or 135.32 (c) boils down to whether redress is available through the judicial process pursuant to 42 USC § 1983. (See 24 CFR 135.76 [j].) 12 USC § 1701u (c) (1), a provision for federal funding of defendant’s resident training and employment program, is enforceable via 42 USC § 1983 only if the federal laws implementing the program manifest “an ‘unambiguous’ intent to confer individual rights.” (Gonzaga Univ. v Doe, 536 US at 280, quoting Pennhurst State School & Hospital v Halderman, 451 US at 17.) To be enforceable by plaintiff, 12 USC § 1701u (c) (1) or 24 CFR 135.30 (b) (1) (iii) or 135.32 (c) must confer an unambiguous mandatory benefit focussed on individual low-income residents of defendant’s housing developments. (Gonzaga Univ. v Doe, 536 US at 280; Wilder v Virginia Hospital Assn., 496 US at 511; Wright v Roanoke Redevelopment & Housing Authority, 479 US 418, 430 [1987].)
24 CFR 135.30 (b) (l)’s 30% standard, by its terms, does not focus on providing a benefit to individual residents of defend *244 ant’s housing. “Far from creating an individual entitlement to services, the standard is simply a yardstick for the Secretary to measure the systemwide performance .... Thus, the Secretary must look to the aggregate services provided . . . , not to whether the needs of any particular person have been satisfied.” (Blessing v Freestone, 520 US 329, 343 [1997]; see Price v Housing Auth. of New Orleans, 2010 WL 1930076, *4, 2010 US Dist LEXIS 52235, *13-16 [ED La, May 10, 2010, No. 09-4257].)
The inquiry then turns to (1) 12 USC § 1701u (c) (l)’s “best efforts” requirement, still applicable if defendant has not met the 30% standard; (2) the statute’s priorities, echoed by 24 CFR 135.34 (a) (1); and (3) 24 CFR 135.32 (c)’s “responsibility” to facilitate the training and employment of defendant’s residents. 12 USC § 1701u (c) (1) and its implementing regulations unquestionably are intended to benefit persons like plaintiff. (Gonzaga Univ. v Doe, 536 US at 282, 284; Blessing v Freestone, 520 US at 340; Wilder v Virginia Hospital Assn., 496 US at 509; Cannon v University of Chicago, 441 US 677, 690-691 n 13 [1979]; Nails Constr. Co. v City of St. Paul, 2007 WL 423187, *4, 2007 US Dist LEXIS 8905, *13-14 [D Minn, Feb. 6, 2007, No. 06-2657 (JNE/SRN)].) These laws also impose mandatory, not hortatory, obligations on local housing authorities like defendant, requiring them to make their best efforts to provide training and employment opportunities, and giving them the responsibility to facilitate training and employment. (Gonzaga Univ. v Doe, 536 US at 282; Blessing v Freestone, 520 US at 341; Wilder v Virginia Hospital Assn., 496 US at 509-510, 512; Williams v United States Dept. of Hous. & Urban Dev., 2006 WL 2546536, *8, 2006 US Dist LEXIS 62661, *26.)
To provide plaintiff a judicial remedy, however, these obligations also must confer entitlements “sufficiently specific and definite to qualify as enforceable rights.” (Gonzaga Univ. v Doe, 536 US at 280; Wright v Roanoke Redevelopment & Housing Authority, 479 US at 432; see Wilder v Virginia Hospital Assn., 496 US at 511-512, 522.) This specificity requirement would bar enforcement of a claim by 12 USC § 1701u (c) (l)’s beneficiaries, such as plaintiff, simply that defendant had not made its “best efforts ... to give to low- and very low-income persons the training and employment opportunities generated” by defendant’s federal funding, without pointing to any particular indicator of wholesale noncompliance. (12 USC § 1701u [c] [1] [A]; Nails Constr. Co. v City of St. Paul, 2007 WL 423187, *4 n 3, 2007 US Dist LEXIS 8905, *12 n 3; see Gonzaga Univ. v Doe, *245 536 US at 281; Suter v Artist M., 503 US 347, 357-358, 363 [1992]; Price v Housing Auth. of New Orleans, 2010 WL 1930076, *4-5, 2010 US Dist LEXIS 52235, *13-16, 18; Nails Constr. Co. v City of St. Paul, 2007 WL 423187, *4, 2007 US Dist LEXIS 8905, *13-14.) The bar likewise might apply to a claim that defendant had not made its “best efforts” and violated 12 USC § 1701u (c) (1) (A) because defendant had not provided plaintiff employment since “best efforts” does not necessarily equate to providing a job to each eligible resident, and such a remedy depends on the availability of positions. (See Marcel v Donovan, 2012 WL 868977, *5, 2012 US Dist LEXIS 34493, *14-16; Williams v United States Dept. of Hous. & Urban Dev., 2006 WL 2546536, *9, 2006 US Dist LEXIS 62661, *28-30; Nails Constr. Co. v City of St. Paul, 2007 WL 423187, *4, 2007 US Dist LEXIS 8905, *13-14.)
Although these obligations may be insufficiently specific to enforce when a plaintiff is claiming a housing authority’s programwide failure to make its best efforts or a failure to provide employment to a specific individual among all the eligible residents, plaintiffs claim here is different. (Marcel v Donovan, 2012 WL 868977, *5, 2012 US Dist LEXIS 34493, *14-16; Williams v United States Dept. of Hous. & Urban Dev., 2006 WL 2546536, *9, 2006 US Dist LEXIS 62661, *28-30; Price v Housing Auth. of New Orleans, 2010 WL 1930076, *4-5, 2010 US Dist LEXIS 52235, *13-16, 18; Nails Constr. Co. v City of St. Paul, 2007 WL 423187, *4, 2007 US Dist LEXIS 8905, *13-14; see Gonzaga Univ. v Doe, 536 US at 282, 284; Blessing v Freestone, 520 US at 340-341.) Plaintiff claims an isolated and specifically delineated violation of federal law: defendant excluded her altogether from eligibility for training and employment opportunities on the false ground that her rent arrears were not fully paid. (Cannon v University of Chicago, 441 US at 705.) While a range of defendant’s omissions in its efforts and facilitation may be permissible, surely not every affirmative obstruction of opportunity is permissible under 12 USC § 1701u (c) (1) and 24 CFR 135.32 (c). (Wilder v Virginia Hospital Assn., 496 US at 519-520, 519 n 17.)
Defendant maintains that plaintiff may not sue to enforce (1) 12 USC § 1701u (c) (1) (A)’s “best efforts” requirement, even to challenge that specific, affirmative act by defendant, or (2) a right conferred by a federal regulation when the governing federal statute does not confer that right (Alexander v Sandoval, 532 US at 285-286) because “rights of action to enforce *246 federal law must be created by Congress.” (Id. at 286.) This latter principle applies only to bar the enforceability of a federal regulation without reinforcement by an enforceable federal statute, independent of 42 USC § 1983. (Alexander v Sandoval, 532 US at 284, 286; Wilder v Virginia Hospital Assn., 496 US at 508 n 9; see Alexander v Sandoval, 532 US at 292.) 42 USC § 1983, however, provides an alternative congressional authorization for a right of action to enforce federal law. (Wilder v Virginia Hospital Assn., 496 US at 508 n 9; Middlesex County Sewerage Authority v National Sea Clammers Assn., 453 US 1, 19 [1981].)
The applicable federal statute here, 12 USC § 1701u (c) (1), grants HUD the power to adopt regulations with the force of law that may require more of local housing authorities than the statute requires as integral parts of the remedial scheme to promote, effectuate, and realize the statutory goals: to transform the statute’s aspiration into reality. Congress has empowered HUD to evaluate local circumstances and to determine whether they warrant stronger measures, and delegated to HUD the determination of how HUD’s grantees of federal funding must alter their practices. (See Wilder v Virginia Hospital Assn., 496 US at 511; Wright v Roanoke Redevelopment & Housing Authority, 479 US at 420.) The statute and the regulations, including 24 CFR 135.32 (c), set out the requirements local housing authorities must meet. (Wilder v Virginia Hospital Assn., 496 US at 519; Wright v Roanoke Redevelopment & Housing Authority, 479 US at 431-432; Shakhnes v Berlin, 689 F3d 244, 251 [2d Cir 2012].) In authoritatively construing the statute, HUD has determined that local housing authorities must facilitate the training and employment of their residents, not that local housing authorities make their best efforts to facilitate that training and employment. (See Wilder v Virginia Hospital Assn., 496 US at 507; Shakhnes v Berlin, 689 F3d at 251.) This regulatory requirement carries the force of law. (Wright v Roanoke Redevelopment & Housing Authority, 479 US at 431.)
Moreover, 12 USC § 1701u (c) (1) (B) separately requires that defendant housing authority give priority to defendant’s residents, not that defendant try its best to afford that priority. (Wilder v Virginia Hospital Assn., 496 US at 512-513, 513 n 11; Marcel v Donovan, 2012 WL 868977, *3, 2012 US Dist LEXIS 34493, *8-9; Williams v United States Dept. of Hous. & Urban Dev., 2006 WL 2546536, *8, 2006 US Dist LEXIS 62661, *26.) Neither HUD, the agency charged with administering, interpreting, and implementing 12 USC § 1701u (c) (1), nor defendant, *247 the local authority, nor any judicial authority has found this construction of the statute or of 24 CFR 135.32 (c), as a means of ensuring that prioritization, to be unreasonable. (Marcel v Donovan, 2012 WL 868977, *3, 2012 US Dist LEXIS 34493, *8-9; Williams v United States Dept. of Hous. & Urban Dev., 2006 WL 2546536, *8, 2006 US Dist LEXIS 62661, *26; see Shakhnes v Berlin, 689 F3d at 252-253.) Neither the statute nor the regulation limits this priority to residents whose rent arrears are fully paid.
Thus, even if 12 USC § 1701u (c) (1) (A) does not confer a specific right on plaintiff, section 1701u (c) (1) (B)’s and 24 CFR 135.32 (c)’s requirement to implement that prioritization by facilitating training and employment for priority group members does confer specific rights. (Shakhnes v Berlin, 689 F3d at 251-252.) Eligibility for the training and employment opportunities and protection against a discontinuance of eligibility on false grounds are unambiguous mandatory benefits, focussed on individual low-income residents of defendant’s housing, conferred by 12 USC § 1701u (c) (1) (B); by the regulation that echoes this statutory mandate, 24 CFR 135.34 (a) (1); and by the companion regulatory mandate, 24 CFR 135.32 (c). (Williams v United States Dept. of Hous. & Urban Dev., 2006 WL 2546536, *8, 2006 US Dist LEXIS 62661, *26; see Gonzaga Univ. v Doe, 536 US at 280; Wilder v Virginia Hospital Assn., 496 US at 511; Wright v Roanoke Redevelopment & Housing Authority, 479 US at 430; Cannon v University of Chicago, 441 US at 705.)
Surely the laws do not permit a local housing authority to exclude from the priority group residents whose rent arrears the housing authority falsely claims are not fully paid. Surely these laws are sufficiently specific, at minimum, both to prohibit defendant from excluding residents whose rent arrears defendant falsely claims are not fully paid and to allow a remedy for such a practice. (Wilder v Virginia Hospital Assn., 496 US at 509-510; Wright v Roanoke Redevelopment & Housing Authority, 479 US at 431-432; see Gonzaga Univ. v Doe, 536 US at 282; Blessing v Freestone, 520 US at 340-341.) Were defendant permitted to exclude low-income residents from training and employment based on a false claim or even for an unauthorized reason, there would be little point in requiring housing authorities to provide those opportunities to those residents. (Wilder v Virginia Hospital Assn., 496 US at 516.)
E. Defendant’s Failure to Meet its Burden
Defendant bears the burden to show the legislative intent to foreclose a private individual from enforcing a federal right *248 through Congress’ express preclusion of a judicial remedy pursuant to 42 USC § 1983, or through its creation of a comprehensive remedial scheme that demonstrates that preclusion. (Wilder v Virginia Hospital Assn., 496 US at 521-522; Wright v Roanoke Redevelopment & Housing Authority, 479 US at 423; Middlesex County Sewerage Authority v National Sea Clammers Assn., 453 US at 20.) As set forth above, HUD’s enforcement mechanisms expressly do not preclude the remedy plaintiff seeks for defendant’s discontinuance of her eligibility for employment and affirmative obstruction of an employment opportunity with defendant’s contractor or its subcontractor. (24 CFR 135.76 [g]; see Wilder v Virginia Hospital Assn., 496 US at 521.) Nor would that remedy thwart HUD’s enforcement mechanisms. (See Merrill Lynch, Pierce, Fenner & Smith, Inc. v Curran, 456 US 353, 374-375 [1982].) Mechanisms to ensure that federal funds are used for their intended purposes of providing training and employment opportunities to housing authority residents, by withholding or limiting the funds until a housing authority demonstrates that it will use them for those purposes, do not preclude a right of action to achieve a coordinate objective. (24 CFR 135.76 [g]; see Wilder v Virginia Hospital Assn., 496 US at 512, 514, 521-522; Wright v Roanoke Redevelopment & Housing Authority, 479 US at 428; Cannon v University of Chicago, 441 US at 705-706.) Providing a housing authority resident a means to protect against a discontinuance of her eligibility for those opportunities on false grounds is fully consistent with Congress’ statutory purposes and HUD’s enforcement objectives.
Finally, although defendant points out that plaintiff has not filed a notice of claim against defendant, insofar as plaintiff pleads an enforceable federal right, she need not file a notice of claim. (Felder v Casey, 487 US 131, 151-152 [1988]; Chenkin v City of New York, 103 AD3d 556, 557 [1st Dept 2013]; Wanczowski v City of New York, 186 AD2d 397 [1st Dept 1992].) Such a requirement may apply to claims for damages based on state law, but, as set forth below, plaintiffs only potentially viable claim is based on 12 USC § 1701u (c) (1), its implementing regulations 24 CFR 135.32 (c) and 135.34 (a) (1), and 42 USC § 1983.
III. Conclusion
In sum, plaintiffs allegations and the documentary evidence indicate that defendant imparted information to REES about plaintiffs delinquency in paying rent when such information *249 may have been an inaccurate or unfair representation of the true facts. Her allegations and supporting evidence indicate that this inaccurate information caused REES to remove her from the priority group eligible for employment opportunities, to discontinue providing any employment opportunities to her, and thus to discontinue facilitating her employment training and employment, in violation of 12 USC § 1701u (c) (1) (B) and 24 CFR 135.32 (c) and 135.34 (a) (1). Plaintiff further shows that, had REES not removed her from the priority group eligible for employment opportunities and, instead, continued providing her employment opportunities by facilitating her training and employment, in accordance with 12 USC § 1701u (c) (1) (B) and 24 CFR 135.32 (c) and 135.34 (a) (1), she would have secured employment through one of defendant’s contractors or its subcontractor.
This latter showing, however, through the correspondence from Sudden Safety Consultants, is neither in the complaint, nor sworn, nor otherwise in admissible form. Without this latter showing, plaintiff fails to show that, had REES not removed her from the priority group and affirmatively obstructed her employment opportunities, she would have obtained a benefit from REES’ continued facilitation, and therefore she was injured by its adverse action.
For the reasons just summarized, the court grants defendant’s motion to dismiss plaintiffs claims for violation of 12 USC § 1701u (c) (1) and 24 CFR 135.32 (c) and 135.34 (a) (1) pursuant to 42 USC § 1983 and CPLR 3211 (a) (1) and (7), unless, within 30 days after service of this order with notice of entry, plaintiff complies with the following condition. She shall serve on defendant an amended complaint or an affidavit by a person with firsthand knowledge from Sudden Safety Consultants or New Millennium Builders, alleging that a participant in defendant’s section 3 resident employment program had a job for plaintiff between June 2011 and March 2012, but did not place her in it because defendant had discontinued her eligibility.
Any dismissal of plaintiffs claims is without prejudice to a future timely and adequately plead action or an administrative complaint to HUD based on similar claims.
[Portions of opinion omitted for purposes of publication.]